NORTHWESTERN TELEGRAPH COMPANY, Plaintiff, *v.* WESTERN UNION TELEGRAPH COMPANY et al., Defendants, and TRAVELERS INSURANCE COMPANY, Intervener, Defendant.

Supreme Court, Special Term, New York County, May 25, 1950.

*Ganson J. Baldwin* for plaintiff.

*John H. Waters* and *William G. H. Acheson* for Western Union Telegraph Company, defendant.

*Dulaney Mahan, Jr., J. H. Baehr* and *A. G. Baehr* for Robert E. Rogers, defendant.

*Milton Pollack* and *Richard F. Wolfson* for Sulzbacher, Granger & Co., defendant.

*Louis C. Fieland* for Richard S. Temko, defendant.

*J. G. Donovan* for intervener, defendant.

WALTER, J. By agreement of May 7, 1881, plaintiff, a Wisconsin corporation, having a capital stock of $2,500,000 represented by 50,000 shares of the par value of $50 each, leased all its property to Western Union Telegraph Co. for a term of ninety-nine years from July 1, 1881; and for the use and occupation of such property Western Union agreed to pay to the owners of mortgage bonds issued by plaintiff the interest upon said bonds as it became due, and also to pay to plaintiff's stockholders $100,000 the first year and an increased amount each year thereafter until the sum became $150,000 for the year ending July 1, 1896, and then $150,000 each year until the expiration of ninety-nine years from July 1, 1881.

In 1936 it became settled that although the rental of $150,000 per year was payable and was paid directly to plaintiff's stockholders, it nevertheless is to be regarded for tax purposes as income of plaintiff (*United States* v. *Northwestern Tel. Co.,* 83 F. 2d 468, certiorari denied, 299 U. S. 565). The opinion in that case specifically states that the money passes to the stockholders, not as assignees, but as a changing class of beneficiaries of which the corporation is in a sense the trustee (83 F. 2d 469), but it nevertheless later was held that the stockholders receiving the rentals are transferees of the lessor and as such are liable for the income taxes imposed upon the lessor in respect of such rentals (*Commissioner of Internal Revenue* v. *Western Union Tel. Co.,* 141 F. 2d 774, certiorari denied, 322 U. S. 751), and the United States has been sustained in its claim of a right to collect from the stockholders of plaintiff the entire amount received by the stockholders and not merely a prorata share of the tax assessed (*Travelers Ins. Co.* v. *Commissioner of Internal Revenue,* 161 F. 2d 93, certiorari denied, 332 U. S. 766).

The practical result of that is that the United States collects the tax from plaintiff's smaller stockholders and its larger stockholders escape.

Confronted with the fact that income taxes were being imposed upon it in respect of the rental being paid by Western Union, and that such taxes are being actually collected from certain of its stockholders, plaintiff sought an adjudication that Western Union itself is obligated by the terms of the agreement to pay such income taxes; but the attempt resulted in a determination that Western Union is not so liable (*Northwestern Tel. Co.* v. *Western Union Tel. Co.*, 194 Misc. 352, affd. 275 App. Div. 914, leave to appeal denied, 299 N. Y. 799).

The situation now thus is that Western Union is not liable for the taxes; plaintiff is liable but has no funds with which to pay them; the United States has obtained judgments against plaintiff for the taxes for the years 1927 to 1937 inclusive, which, with interest to March 15, 1950, amount to $514,296.14; the taxes for 1938 to 1941 have been entirely paid and those for 1942 to 1945 have been substantially paid by transferee proceedings against plaintiff's stockholders; the taxes for 1946 to 1949, including interest, now amount to about $248,520; and current assessments are at the rate of about $57,000 per year.

The United States has indicated that it is willing to compromise its claims on a basis which will save plaintiff and its stockholders about $160,000 on the accrued taxes, if plaintiff can arrange to have the taxes paid out of the rentals being paid by Western Union, but will insist upon payment in full if it has to continue its practice of enforcing collection by transferee proceedings against plaintiff's stockholders; and it also threatens to sell plaintiff's sole asset (its reversion in the property leased to Western Union), in order to obtain satisfaction.

Plaintiff accordingly brings this action for an adjudication that the rentals should be applied to the taxes and an injunction restraining Western Union from paying such rentals to plaintiff's stockholders until notified by plaintiff that they are no longer required for the payment of taxes.

A prior action for like relief, brought by plaintiff and two of its stockholders, was dismissed because the procedural requirements requisite for an effective adjudication with respect to the rights of plaintiff's stockholders had not been complied with (*Northwestern Tel. Co.* v. *Western Union Tel. Co.*, N. Y. L. J. Feb. 23, 1950, p. 666, col. 2).

The first question here, therefore, is whether or not such requirements have now been met.

Plaintiff, of course, does not represent its stockholders in a suit, the object of which is to affect the rights of the stockholders as against Western Union, and neither does any one stockholder of plaintiff in truth represent the other stockholders in such a suit. A fortiori, Western Union does not represent plaintiff's stockholders in such a suit. But where a suit involves a question common to all members of a class, and the members of the class are so numerous that it is impractical to make them all parties to the suit, some members of the class may be made parties and if the court finds that those made parties are in fact sufficient to properly protect the interests of all (or, according to the phrase used in *McArthur* v. *Scott*, 113 U. S. 340, 392, sufficient " to insure a fair trial of the issue in behalf of all "), the court properly may proceed without the actual presence of all the members of the class and the judgment rendered will be binding upon all members of the class (Civ. Prac. Act., § 195; *Colorado & Southern Ry. Co.* v. *Blair*, 214 N. Y. 497; *McArthur* v. *Scott, supra*, pp. 391–395; *New York State Rys.* v. *Security Trust Co.*, 135 Misc. 456, 462, 463, affd. 228 App. Div. 750; *United States Mtge. & Trust Co.* v. *New York Dock Co.*, 108 Misc. 120, 127). In such cases the court proceeds *ex necessitate* and not upon any theory of true representation (*Colorado & Southern Ry. Co.* v. *Blair, supra*, p. 515).

The question in this case is one which is common to all members of a class, viz., the stockholders of plaintiff. Plaintiff has over 1,000 stockholders, who reside throughout the United States, there being some in nearly every State. It thus is impractical to make all members of the class parties to the action. Plaintiff has joined as defendants a total of 119 stockholders, holding 11,192 shares of its stock. Those joined consist of some holding less than ten shares each, some holding between ten and twenty, some holding between fifty and one hundred, and some holding over one hundred. Some of those joined acquired their stock as late as 1950 and some acquired their stock as long ago as 1927. Those joined include individuals and partnerships and an insurance company which holds 2,000 shares and has held such shares for at least fifty years. Some of those joined appeared but made default in pleading. Some appeared and answered, and some appeared at and participated in the trial; and there is nothing even remotely suggesting anything like collusion.

I think it apparent, therefore, that in number, character and extent of holdings, the stockholders who have been joined as defendants in this action are amply sufficient to protect the interests of all stockholders and insure a fair trial of the issue in behalf of all; and that such fair trial has been had. Even if there be merit in the suggestion that stockholders who purchased their stock after the accrual of the presently unpaid taxes are in a position different from those who purchased before such accrual, which does not seem to me to be so, the representation is still sufficient because stockholders who purchased after and stockholders who purchased before such accrual have both been joined. Furthermore, in addition to formally joining a substantial number of members of the class, plaintiff notified all stockholders by mail of the pendency and nature of the suit and afforded them ample opportunity to intervene. I am of the opinion, therefore, that the court consequently can proceed to an adjudication of the questions involved with complete confidence that such judgment as it renders will fully meet the requirements of due process of law and be binding upon all stockholders; and the judgment to be entered hereon will so provide.

It seems to me obvious that continuance of the present situation, with accrued tax liabilities rapidly accumulating additional interest, current tax liabilities accruing at the rate of $57,000 per year, and the stockholders being subjected to transferee proceedings for collection of the tax from them, should not be permitted. Some remedy should be found; some relief should be afforded.

The suggestion has been made that at least further accruals of the tax liability can be prevented by the dissolution of the plaintiff; another suggestion is that Western Union and the stockholders might agree to substitute some form of bond for the present rentals. Such suggestions, however, even if feasible and wise, require consensual action — the making of some new contract or the taking of some steps outside the limits of a litigated controversy. They deserve and no doubt will receive earnest consideration by the persons whose duty and interest it is to consider them, but they are not things which a court can decree.

The agreement under which Western Union holds plaintiff's property contains the provision that upon request Western Union will indorse on the certificates of plaintiff's stock an

agreement to pay such proportion of the agreed annual rental as belongs to the stock contained in such certificate; and in assumed compliance with that provision the certificates of plaintiff's stock contain the statement, " This stock is entitled to dividends under the provisions of a certain contract with the Western Union Telegraph Company taking effect July 1st, 1881 and running 99 years. Dividends are payable semi-annually at the office of said Western Union Telegraph Company in the City of New York as follows: * * * five and seven eighths per cent in equal amounts on the first days of January and July 1896, and thereafter six per cent in equal amounts on the first days of January and July in each and every year for ninety-nine years from the first day of July 1881." The certificates also contain the additional statement that such dividends are guaranteed by Western Union.

By reason, particularly, of those statements in the stock certificates, it is urged that there is an absolute contract by Western Union to pay to the stockholders the full sum of $150,000 annually, and that to divert any part of that sum to the payment of income taxes of plaintiff would be an impairment or variance of that contract which the court is without authority to make.

As pointed out in *Northwestern Tel. Co.* v. *Western Union Tel. Co.* (194 Misc. 352, 360, *supra*) however, the word " dividends " in the stock certificates is really a misnomer. What Western Union has agreed to pay to plaintiff's stockholders is compensation for the use of plaintiff's property. Furthermore, the stock certificates refer to the agreement, and every purchaser of stock was thereby put upon notice of the agreement and is chargeable with knowledge of all that it contains and provides. The stockholders' rights and Western Union's liabilities are all subject to and measured by the agreement.

The court, of course, cannot make a new contract for the parties and cannot vary the contract they have made. But the court can construe the contract, and in so doing it may limit and qualify the seeming absoluteness of the promise of Western Union to pay $150,000 to plaintiff's stockholders if that be necessary to avoid illegality or absurdity. " The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity " (*Surace* v. *Danna,* 248 N. Y. 18, 21). The same thing is true, I think, if illegality be the outcome of the reading.

I do not go so far as to say that if things so work out that the contract deprives plaintiff of funds with which to pay its income taxes it would for that reason alone be necessarily illegal; but I do say that it should be so read as to avoid that result if it be at all possible to so read it.

Furthermore, a court of equity, in order to accomplish the fundamental purpose of a trust, may, to a certain extent and under certain circumstances, break in upon the terms of a trust and authorize a disposition of trust property not specifically authorized by the instrument creating the trust (*Colorado & Southern Ry. Co.* v. *Blair,* 214 N. Y. 497, 513, *supra; Chase Nat. Bank* v. *Manila Elec. Co.,* 180 Misc. 483, 486; *Bennett* v. *Nashville Trust Co.,* 127 Tenn. 126; *Longwith* v. *Riggs,* 123 Ill. 258, 264, 265).

Even if it were legally permissible so to route compensation for the use of plaintiff's property that it constitutes taxable income of plaintiff and yet cannot be used by plaintiff to pay the taxes assessed in respect of such income, it cannot be assumed that the parties intended to do that. If it can be thought that in 1881 they contemplated Federal income taxes, it must be assumed that they intended that plaintiff should pay such taxes as the law imposed upon it. Plaintiff's stockholders have no right under any law to receive the compensation paid for the use of plaintiff's property in preference to such taxes as plaintiff becomes legally obligated to pay in respect of such compensation, and it does not seem to me reasonable to assume that the contract was intended to give them such a right.

I conclude, therefore, that the right of plaintiff's stockholders to receive the $150,000 per year which Western Union has promised to pay, and also Western Union's obligation to pay such sum to plaintiff's stockholders, are subject to the right of the United States to collect income taxes from plaintiff and to the duty of plaintiff to pay such income taxes; and for that reason and upon that ground plaintiff is entitled to judgment (1) adjudging that such right and duty are so subject; (2) directing Western Union to pay to plaintiff instead of to plaintiff's stockholders such portion of the $150,000 per annum as shall be necessary to discharge plaintiff's obligation to the United States for income taxes legally assessable against plaintiff in respect of the payments made and to be made by Western Union under said agreement of May 7, 1881; (3) enjoining Western Union from paying to plaintiff's stockholders such part of such $150,000 per annum as shall be necessary to discharge such obligation.

As the accrued obligation of plaintiff for such taxes now exceeds $750,000, it very well may be that under this decision at least four and maybe five years will elapse before any further payment can be made by Western Union to plaintiff's stockholders, and if the parties can work out by agreement some arrangement by which the accrued obligation for taxes can be discharged in such way as will permit some portion of the $150,000 per year to be paid to the stockholders before the expiration of such four or five years, consideration will be given to an approval of such agreement; but as a matter of strict legal right I see no escape from the conclusion that the tax obligation must be discharged before any further payments are made to the stockholders.

Counsel for Western Union has expressed a fear that some stockholder may remain unconvinced that the judgment herein is binding and conclusive upon him and may sue Western Union for the payment which Western Union in ordinary course would make to him but for the judgment herein; and in that event, he points out, Western Union may be compelled to incur liability for counsel fees and other expenses in defending such a suit even though it ultimately succeed in its defense. He requests, therefore, that some provision be made for reimbursement to Western Union of any sum it may be compelled to pay in defending such a suit.

As the judgment herein follows the usual lines of a class suit in accordance with decisions of the Supreme Court of the United States and of our Court of Appeals, the probability of such a suit by a stockholder against Western Union seems to me to be rather remote, or at least a case of borrowing trouble; but as such a suit perhaps cannot be said to be clearly impossible, and as the situation seems to admit of a feasible protection to Western Union, the judgment herein may further provide that if such a suit be brought against Western Union it shall be at liberty to reimburse itself for any expense or liability to which it is thereby subjected by paying such expense or liability out of any funds which the suing stockholder ultimately may be entitled to receive from Western Union.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.