CADMAN MEMORIAL CONGREGATIONAL SOCIETY OF BROOKLYN et al., Suing on Behalf of Themselves and Other Congregational Christian Churches Similarly Situated, Respondents, v. HELEN KENYON, as Moderator of The General Council of the Congregational Christian Churches, Appellant.— Present — Nolan, P. J., Johnston, Adel and Wenzel, JJ.; Carswell, J., not voting. Motion to resettle order denied, without costs. On the court's own motion, the decision handed down April 14, 1952 (*ante,* p. 1015), is amended to read as follows: Appeal by defendant from a judgment which, *inter alia,* declares as between the parties the rights of the plaintiffs and certain other Congregational Christian Churches similarly situated, with respect to funds and property alleged to be held by defendant

and certain corporate societies and agencies, not parties to this action, in trust for specified religious purposes, declares that such funds and assets held by defendant and such corporations, except as otherwise required by express trusts, are held in trust for such purposes, states the rights of said parties, and defendant's authority, with respect to the "Basis of Union of the Congregational Christian Churches and the Evangelical and Reformed Church ", alleged to have been adopted by defendant without authority on behalf of the churches comprising the Congregational Christian Churches of the United States, and grants injunctive relief as against defendant, its members, present and future officers, attorneys, employees, agents and instrumentalities, and all other persons acting with knowledge of the terms of the judgment. Judgment reversed on the law and the facts, with costs, and plaintiffs' complaint and defendant's counterclaim dismissed, with costs to defendant. In controversies such as this, ecclesiastical or doctrinal questions may be inquired into only insofar as it may be necessary to do so to determine the civil or property rights of the parties. The civil courts do not interfere with ecclesiastical matters in which temporal rights are not involved. Plaintiffs have failed to establish any right or interest in or to the funds and other assets which plaintiffs asserted were held in trust, which requires or permits a determination of the ecclesiastical issues presented. The action was not brought upon the theory that the rights of the plaintiffs or other churches similarly situated, with respect to ownership and control of their individual properties and funds, would be in any way threatened or endangered by the proposed church union complained of. As to such rights and as to funds held under express trusts, there is no dispute between the parties. As to other funds held by or under the control of the defendant, it was not established that they were received in any way other than as absolute gifts or contributions, to be expended for specific objects or for defendant's usual purposes. Neither does the evidence establish that the funds or assets held by the corporate societies and agencies, other than those held under specific trusts, are held under any trust, except in the general sense in which all corporations hold their property for the execution of their corporate purposes (cf. *Corporation of Chamber of Commerce* v. *Bennett*, 143 Misc. 513; *Wetmore* v. *Parker*, 52 N. Y. 450; *Bird* v. *Merklee*, 144 N. Y. 544; *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462), nor has it been established that any fiduciary obligation imposed by corporate charters or certificates, or directions given to limit the use of such funds (cf. *St. Joseph's Hosp.* v. *Bennett*, 281 N. Y. 115) will be violated by the consummation of the "Basis of Union " approved by defendant, or that any such violation is threatened or imminent (cf. *1130 President St. Corp.* v. *Bolton Realty Corp.*, 300 N. Y. 63, 69; *People* v. *Canal Board of N. Y.*, 55 N. Y. 390). If such violation shall be threatened, protection to donors and beneficiaries is provided through an action by the Attorney-General, who may compel the use of such funds for the purposes for which they were given. (*St. Joseph's Hosp.* v. *Bennett, supra; Trustees of Sailors' Snug Harbor* v. *Carmody*, 158 App. Div. 738, affd. 211 N. Y. 286; *Female Assn. of New York* v. *Beekman*, 21 Barb. 565.) In any event there should have been no declaration of the rights of plaintiffs with respect to the funds and assets held by the corporate societies and agencies. If any declaration is to be made with respect to plaintiffs' rights in or to such funds, or if it is to be determined that such funds are subject to a trust which may be enforced at the instance of plaintiffs, such determination should be made only in an appropriate action or proceeding

in which such corporate societies and agencies may be before the court as parties. A declaratory judgment serves a legitimate purpose only when all persons who may be affected thereby and who may question in a court the existence and scope of the rights declared are parties to the action and have opportunity to be heard. A court may, and ordinarily must, refuse to render a declaratory judgment in the absence of such parties. (*Manhattan Stor. & Warehouse Co.* v. *Movers Assn.*, 289 N. Y. 82; *Wood* v. *City of Salamanca*, 289 N. Y. 279.) Findings of fact, express and implied, inconsistent with the foregoing, except such findings as were made expressly or by implication, upon questions of doctrine, polity and other ecclesiastical matters, are reversed. For the reasons heretofore stated, this court has not considered and has made no determination upon the questions of fact arising upon the issues as to such ecclesiastical matters. Nolan, P. J., Adel, MacCrate and Schmidt, JJ., concur; Wenzel, J., dissents and votes to modify the judgment in consonance with the following memorandum: I cannot agree that the trial court had no jurisdiction to determine this matter. Both the plaintiffs' complaint and the defendant's counterclaim ask for declaratory judgments. The complaint alleges, in paragraph 25 thereof, " Upon information and belief, that if such union is so consummated the funds and other assets of said Congregational Christian boards, agencies, commissions, corporations and instrumentalities will be diverted from the uses and purposes for which they were set up, created and established and for which they have heretofore been used." In its prayer for relief, the plaintiffs' complaint asks *inter alia* that the court declare " that Congregational Christian Churches which do not by independent individual action unite with the church or religious body set up under the Basis of Union will be and remain the Congregational Christian Churches entitled to all the rights and privileges presently possessed and enjoyed by such churches." Defendant's counterclaim requests that the court declare " That the plaintiffs and those churches for whose benefit the plaintiffs claim to be suing have no property rights in or control over their funds ". Thus, I believe the court's jurisdiction is clearly established and a definite question is laid before us for determination. It would seem to me that this case is an exemplar of a proper suit for a declaratory judgment. I am not, however, in entire accord with the determination of the trial court. The Congregational Christian Church (using the name collectively) is admitted to be one in which each individual church is completely autonomous. There is no hierarchy or single ecclesiastical authority beyond it to which it owes obedience. While through the years the various churches have associated themselves in matters of common interest within the framework of an underlying faith, what authority is vested in such associations, conferences and councils arises from the congregations. They are not designed or intended as a repository of any part of the church's autonomy. The churches rule them, they do not rule a single church. Its dogma, its creed and its sacraments are its own. There seems to be ample evidence that generally its members believe in the desirability of the unity of Protestant faiths, and that there may be unity of many shades of religious belief without a surrender of cherished convictions. I conceive that there is no great difference between the parties as to this principle. It is the manner in which an alleged unification was to be brought about, at which the plaintiffs balk, and I might say here parenthetically that the fact that similar methods were before successfully employed gives them no legal sanction since no protest or opposition was at that time raised sufficient to test their validity. The individual church

being autonomous, there is no one who may gainsay its right to approve or adopt any scheme of unity with any church regardless of by whom or how it was evolved. There is, on the other hand, no body, corporate or otherwise, who may here ex cathedra separate a dissident group from the rights and privileges it enjoyed before it refused to accept the thoughts and ideas of any other group, however numerically strong. Through the years, from many sources and for various purposes, there came into the possession of those who represented the common interests of the Congregational Churches very substantial sums of money. That these might be administered in an efficient manner, a dozen different corporate bodies were organized. Some of these were for the propagation of the Protestant faith and missionary purposes throughout the world, on a broad and liberal basis. At least six of these corporations had professed purposes which created in the Congregational Churches, their ministers and their lay-workers, both vested and inchoate rights in the funds administered by these corporations. I shall not lengthen this memorandum by quoting these purposes verbatim but shall merely call attention to the fact that they contemplated financial assistance to impoverished churches, indigent ministers and lay-workers, pensions for superannuated ministers, and assistance to their widows and families, where necessary. That these rights are endangered cannot be doubted. In "An analysis of the Basis of Union" (Schlaretzki, plaintiffs' Exhibit 28) we find this statement in connection with what is to become of the church which does not embrace the basis for unity: "It might remain independent, having no connection with United Church, or enter another denomination. In this case it would take its property with it * * *. It would, naturally, give up its *rights* in Congregational Christian bodies as well as in United Church bodies, though, if it desired, it could continue to have such relationships with such bodies as would be possible to a church not being a member of the denomination." This has reference to all the funds possessed by the aforesaid corporations which, while they have separate existence, are wholly controlled by the defendant. Their being has no doctrinal or spiritual purpose but to carry on the business of the general council which is of a temporal character. An amended order will be entered accordingly. [See 280 App. Div. 789, 819, 828.]