**FIRST CONGREGATIONAL CHURCH AND SOCIETY OF BURLINGTON, IOWA**, First Congregational Church of Pontiac, Michigan, First Congregational Church of Wauwatosa, Wisconsin, Mayfair Congregational Church of Toledo, Ohio, Malcolm K. Burton, Bruce H. Masselink, Angus MacDonald, Harry R. Butman, Gladys T. Kennedy, Norman S. McKendrick, Roy W. Abel, Richard H. Plock, John G. Pryor and Frederick Grabow, suing on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**EVANGELICAL AND REFORMED CHURCH**, John T. Beach, as Treasurer and a member of The General Council of the Congregational Christian Churches of the United States, The Board of Home Missions of the Congregational and Christian Churches, The American Missionary Association, The Congregational Home Missionary Society, The Congregational Church Building Society, The Congregational Sunday School Extension Society, The Congregational Board of Ministerial Relief, Congregational Education Society, Congregational Publishing Society, The Annuity Fund for Congregational Ministers, Retirement Fund for Lay Workers, The Corporation for the General Council of the Congregational Christian Churches of the United States, and American Board of Commissioners for Foreign Missions, Defendants.

United States District Court
S. D. New York.
March 28, 1958.

See also 21 F.R.D. 325.

Davies, Hardy & Schenck, New York City, McCobb, Heaney & Dunn, Grand Rapids, Mich., for plaintiffs. Kenneth W. Greenawalt, New York City, Robert C. C. Heaney, Grand Rapids, Mich., Thomas T. Adams, New York City, of counsel.

Wood, Werner, France & Tully, New York City, for defendants other than Evangelical and Reformed Church and American Board of Commissioners for Foreign Missions. Charles H. Tuttle, Loren N. Wood, Loren T. Wood, Stuart H. Johnson, Jr., New York City, of counsel.

Mudge, Stern, Baldwin & Todd, New York City, John W. Mueller, St. Louis, Mo., for defendant Evangelical and Reformed Church. Paul D. Miller, Bernard Nemtzow, New York City, of counsel.

Goldstein, Judd & Gurfein, New York City, for defendant American Board of Commissioners for Foreign Missions. Orrin G. Judd, Theodore Miller, New York City, of counsel.

DAWSON, District Judge.

These are three motions brought by defendants in the above-entitled action.

1. Defendant General Council of the Congregational Christian Churches and defendants Congregational boards, corporations and funds move to dismiss the complaint under Rules 12 and 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. on the grounds that this Court lacks jurisdiction or that its jurisdiction has been improperly contrived, and on grounds of *res judicata*, or, alternatively, that the Court should exercise its discretion not to accept jurisdiction over the action.

2. Defendant Evangelical and Reformed Church moves for judgment dismissing the complaint pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure on the grounds that the Court is without jurisdiction of the subject matter and that the complaint fails to state a claim on which relief can be granted.

3. Defendant American Board of Commissioners for Foreign Missions moves to dismiss the action as against it for failure of jurisdiction over the defendant in that the defendant is not doing business within the Southern District of New York, or, alternatively, that the Court should decline jurisdiction over a matter dealing with the internal affairs of a foreign corporation.

### Nature of the Action

The action is brought as a representative action, seeking a declaratory judgment, by a number of Congregational Christian Churches and ministers and members of Congregational Christian Churches who also are, or were, members of the General Council of the Congregational Christian Churches of the United States, and by corporate members of The Board of Home Missions of the Congregational Christian Churches

and of the American Board of Commissioners for Foreign Missions, and members of The Annuity Fund for Congregational Ministers. The action is brought to determine questions of the validity, interpretation and construction of a purported written agreement entitled "The Basis of Union of the Congregational Christian Churches and The Evangelical and Reformed Church" and "The Interpretations" and to determine questions in respect of the rights and other legal relations of plaintiffs and those similarly situated arising out of and in connection with said agreement, and their rights as affected by the proposed or existing merger of the Congregational Christian Churches and the Evangelical and Reformed Church into the United Church of Christ. Plaintiffs say that they and a large number of Congregational Christian Churches and members thereof are opposed to the union of the Congregational Christian Churches and the Evangelical and Reformed Church, and plaintiffs seek a declaratory judgment that the various agreements for the merger of the churches and establishing the proposed new United Church of Christ are invalid as to themselves and invalid to change or affect the status, income, assets or functions of defendant Council, boards, funds and corporations. They seek to have their rights in said boards, funds and corporations declared.

### The Issue of Res Judicata

The two motions brought on by the Congregational defendants and by the Evangelical and Reformed Church raise principally the issue of the effect of a prior litigation in the New York State courts, which was entitled, "Cadman Memorial Congregational Society of Brooklyn and The Cadman Memorial Church, suing on behalf of themselves and other Congregational Christian Churches similarly situated, against Helen Kenyon, as Moderator of the General Council of the Congregational Christian Churches of the United States." See Sup.Ct.Kings Co., 1950, 197 Misc. 124, 95 N.Y.S.2d 133, reversed App.Div. 2d Dept.,

1952, 279 App.Div. 1015, 1074, 111 N.Y.S. 2d 808, affirmed 1953, 306 N.Y. 151, 116 N.E.2d 481. Movants contend that the above litigation was a representative action which determined adversely to the present plaintiffs the issues which have been raised by the complaint in this suit. Plaintiffs counter that this is not the case, that the issues in the present suit are different from those in the New York suit; that the parties are different, and that the New York court did not, in fact, enter a declaratory judgment which would have a binding effect on the parties here. Plaintiffs also contend that the facts have changed since the time the New York State court adjudicated the matter and, additionally, that admissions and concessions of the defendants in that case have been breached and are not binding upon the additional parties defendant in this litigation.

Since the prior New York litigation presents the principal issue here, it is necessary to present a brief review of conceded and apparent facts of the litigation and of the history of the litigation in the New York State courts. The controversy in the New York courts, as here, was concerned with the plan of union under which the Congregational Christian Churches of the United States and the Evangelical and Reformed Church proposed to unite, or have united, under the name of The United Church of Christ. The Congregational Christian Churches approximate 5,800 churches in America, which by tradition and usage are independent, self-governing fellowships without any central ecclesiastical control. These churches were or are organized in district associations, State conferences and conventions and a General Council national in scope. The membership in this group numbers over 1,300,000.

The Evangelical and Reformed Church is or was a Protestant denomination of national scope consisting of congregations, synodical units and an ecclesiastical governing body having jurisdiction over such congregations and their members, ministers and organizations. At the time of the Cadman suit this church

consisted of approximately 2,800 churches having a membership of over 700,000 persons.

The Cadman Church, which was the plaintiff in the New York State court action, is one of the oldest and largest of Congregational Christian Churches, and is located in Brooklyn, New York. The General Council of the Congregational Christian Churches, which was the defendant in the New York State court action, is a voluntary association of Congregational Christian Churches, national in scope, having a constitution, by-laws and standing rules. According to its constitution its membership is made up of both laity and clergy representing individual Congregational Churches, local associations and district conferences or conventions and affiliated colleges and theological seminaries, as well as certain other designated groups or classes of persons, such as ex-officio members of the conferences or conventions, representatives of home and foreign missions, honorary members, ecumenical members and certain others, by invitation, the latter enjoying the privilege of the floor but having no vote.

A Commission on Interchurch Relations and Christian Unity, representing the General Council and a committee representing the Evangelical and Reformed Church, after several years of study and negotiations, developed the document called "The Basis of Union of the Congregational Christian Churches and the Evangelical and Reformed Church" with "Interpretations," and adopted the final form of this document in January of 1947. The document was submitted to the individual Congregational Christian Churches and State conferences who voted upon it, and it appears that about 72% of those voting approved the Basis of Union, as did 90% of the associations and district conferences. The General Council, at a meeting held in February 1949, voted (757 for and 172 against) to consummate the plan and so advised the Evangelical and Reformed Church, which itself approved the plan.

It appears that a group of Congregational ministers and members of Congregational churches, who were opposed to the proposed merger, formed into a voluntary association called "The Committee for the Continuation of the Congregational Christian Churches of the United States." On April 18, 1949, the Cadman Memorial Congregational Society of Brooklyn, a New York religious corporation, and the Cadman Memorial Church, an unincorporated religious body affiliated with the Cadman Memorial Congregational Society, filed suit in the Supreme Court of New York State against Helen Kenyon, as Moderator of the General Council of the Congregational Christian Churches of the United States. The Cadman Memorial Congregational Society has custody and control of the temporalities and property of the Cadman Memorial Church and the Cadman Memorial Church conducts services of worship and other religious activities in the church edifice located in Brooklyn. The complaint in the Cadman action was framed as a representative action and the plaintiff church alleged itself to be suing for the benefit of all churches similarly situated. It alleged that a large number of Congregational churches were opposed to the merger of the Congregational Christian Church with the Evangelical and Reformed Church on the Basis of Union, and that a larger number of said churches had not voted on the merger. The complaint stated that the questions involved were of common or general interest to all of such churches and it would be impractical to bring them or any number of them before the Court. The complaint in that case is part of the record on appeal submitted to the New York Court of Appeals and is one of the exhibits before this Court on this motion. The complaint is in 27 paragraphs, with 8 additional paragraphs praying for declaratory judgment and injunction. The counsel for the Cadman Church in the New York action was the law firm of Davies, Hardy, Schenck & Soons, of New York City, who are counsel for the plaintiffs in the present action.

The New York Court of Appeals made a good summation of the complaint in its opinion rendered in the case. It stated:

"The plaintiff seeks a judgment declaring that the General Council has no power or authority to consummate the Basis of Union on its behalf or other Congregational Christian Churches, and that any Congregational Christian Churches uniting with the proposed United Church of Christ, as proposed in the Basis of Union 'will cease to be churches of that [Congregational] fellowship and denomination and cease to have any right or interest in or any connection with the corporations, commission, board, agencies and instrumentalities representing or acting for or under the direction and control of the Congregational Christian Churches or the funds and properties thereof' and that any Congregational Christian Churches who do not join with the United Christian Church, will 'remain the Congregational Christian Churches entitled to all the rights and privileges presently possessed and enjoyed by such churches' including 'the control and benefit of all the corporations, commissions, boards, agencies and instrumentalities which now represent and act for or are under the direction of the present Congregational Christian Churches' and that the United Church and all those who join with it shall have no interest therein.

"As an incident thereto it seeks injunctive relief to restrain the General Council, its members and officers, from consummating the Basis of Union and to restrain the General Council, its agencies and instrumentalities from merging or transferring and mingling their funds and assets with the Evangelical and Reformed Church or with the United Church of Christ." Cadman Memorial Cong. Soc. v. Kenyon, 1953, 306 N.Y. 151, at page 161, 116 N.E.2d 481, at page 484.

After a trial of over twenty days the Supreme Court of New York issued an opinion and judgment finding for the plaintiffs and granting substantially the declarations and the injunction they had sought. The opinion comprised some thirty-six pages.

The decision of the trial court declared that the General Council of the Congregational Christian Churches has no power or authority on behalf of or in the name of the separate churches to proceed with or to carry out and consummate The Basis of Union of the Congregational Christian Churches and the Evangelical and Reformed Church; and that the General Council also has no power or authority to merge or unite itself with the Evangelical and Reformed Church, or with the General Synod, or with any other body or organization whatsoever. The judgment also declared that no acts taken by the General Council in attempted consummation of The Basis of Union will affect the separate Congregational Christian Churches, except in so far as individual churches shall, by independent action, unite with the new church attempted to be created under said Basis of Union, nor would those acts control in any manner the plaintiffs in their temporal or spiritual rights or possessions. The judgment also declared that no prior vote would commit a church as a member of the United Church of Christ and declared that the policy of the Congregational Christian Churches is that system which recognizes the independence and autonomy of the local church in all matters temporal and spiritual, and the association of churches through voluntary, independent organizations devised for fellowship and cooperation but without ecclesiastical authority. The judgment also declared that there was in existence a named group of corporations, boards and agencies of the Congregational Christian Churches controlling large sums of money and properties, listing some twelve boards (all of whom are defendants in the present action), and declaring that all of these boards, agencies, etc., except

as otherwise required by express trusts, are held or controlled in trust for the benefit and activities of the Congregational Christian Churches and for the purpose of carrying out and aiding the Christian way of life through the principles of the Congregational Christian Churches and may not be alienated from those purposes. See Cadman Memorial Cong. Soc. of Brooklyn v. Kenyon, Sup.Ct. Kings County, 1950, 197 Misc. 124, 95 N.Y.S.2d 133.

This judgment of the Supreme Court was reversed by the Appellate Division, 2d Department, in 1952; 279 App.Div. 1015, 1074, 111 N.Y.S.2d 808.

The Appellate Division held:

"In controversies such as this, ecclesiastical or doctrinal questions may be inquired into only insofar as it may be necessary to do so to determine the civil or property rights of the parties. The civil courts do not interfere with ecclesiastical matters in which temporal rights are not involved. Plaintiffs have failed to establish any right or interest in or to the funds and other assets which plaintiffs asserted were held in trust, which requires or permits a determination of the ecclesiastical issues presented. The action was not brought upon the theory that the rights of the plaintiffs or other churches similarly situated, with respect to ownership and control of their individual properties and funds, would be in any way threatened or endangered by the proposed church union complained of. As to such rights and as to funds held under express trusts, there is no dispute between the parties. As to other funds held by or under the control of the defendant, it was not established that they were received in any way other than as absolute gifts or contributions, to be expended for specific objects or for defendant's usual purposes. Neither does the evidence establish that the funds or assets held by the corporate societies and agencies, other than those held under specific trusts, are held under any trust, except in the general sense in which all corporations hold their property for the execution of their corporate purposes, * * * nor has it been established that any fiduciary obligation imposed by corporate charters or certificates, or directions given to limit the use of such funds, * * * will be violated by the consummation of the 'Basis of Union' approved by defendant, or that any such violation is threatened or imminent, * * *." 111 N.Y.S. 2d at page 810.

The Appellate Division further held:

" * * * In any event there should have been no declaration of the rights of plaintiffs with respect to the funds and assets held by the corporate societies and agencies. If any declaration is to be made with respect to plaintiffs' rights in or to such funds, or if it is to be determined that such funds are subject to a trust which may be enforced at the instance of plaintiffs, such determination should be made only in an appropriate action or proceeding in which such corporate societies and agencies may be before the court as parties. A declaratory judgment serves a legitimate purpose only when all persons who may be affected thereby and who may question in a court the existence and scope of the rights declared are parties to the action and have opportunity to be heard. A court may, and ordinarily must, refuse to render a declaratory judgment in the absence of such parties. * * *" 111 N.Y.S.2d at page 811.

Judgment was reversed on the law and the facts, with costs, and plaintiffs' complaint and defendant's counterclaim was dismissed, with costs to the defendant.

The Court of Appeals affirmed the Appellate Division. 306 N.Y. 151, 116 N.E. 2d 481, reargument denied 1954, 306 N.Y. 851, 118 N.E.2d 909. The admissions of the General Council were held to assure that the proposed union would

not change the pattern of the individual Congregational Christian Churches and served also to assure that no action taken by the General Council would obligate an individual church to join the union, except through its own voluntary action. Under these circumstances the Court of Appeals held that no ecclesiastical question was presented. 306 N.Y. 151, at page 163, 116 N.E.2d 481, 486. As to the general funds possessed by Congregational corporations, boards and societies, the Court of Appeals said that "in most instances their charters give them very broad and general powers which would not be violated by uniting with any other similar charitable and religious organization" and that the Cadman Church had not contributed any funds for other than a general corporate purpose and these voluntarily without restriction as to use or application. The Court of Appeals then held that:

"\* \* \* Under such circumstances it must be assumed that such funds were general gifts for use by the corporations in connection with their general corporate purposes. Such voluntary unrestricted contributions for a general charitable and religious purpose create no proprietary or beneficial interest warranting the civil courts in interfering in their expenditure so long as it appears that such use and application is not violative of charter purposes. As this court has previously observed: 'Gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense.' " 306 N.Y. at page 166, 116 N.E.2d at page 487.

The Court of Appeals also made repeated mention of the fact that the parties had agreed that no funds or properties held by the Cadman Church, or funds held under express trusts, including pension funds, would be affected by the proposed union.

The Court of Appeals further stated:

"\* \* \* Absent a showing that any fiduciary obligation imposed by the charters or certificates of incorporation of any board or agency will be violated or that such violation is imminent or threatened, there is no basis or necessity for a declaratory judgment enjoining the General Council in any respect, nor may any restraining order issue against the various corporate boards and agencies, the Evangelical and Reformed Church or the United Church of Christ, as they have not been made parties defendant and are not before the court. Such a remedy is available only in an appropriate action, which this is not. \* \* \* On this record, the proof having established that the Basis of Union is voluntary and in no way interferes with Congregational faith or manner of worship, and the plaintiffs having failed to establish any direct or beneficial interest in and to the unrestricted funds of the General Council, its various boards, agencies and instrumentalities, and having failed to show that any such general funds are to be used for other than authorized charter purposes, the complaint was properly dismissed on the merits.

"The judgment appealed from should be affirmed, without costs." 306 N.Y. at page 167, 116 N.E.2d at page 487.

The Court of Appeals ordered and adjudged that the judgment of the Appellate Division be affirmed without costs, and that the records and proceedings in the Court of Appeals be remitted to the Supreme Court, there to be proceeded upon according to law. The Supreme Court of Kings County entered judgments on December 16, 1953 and January 25, 1954, which adjudged that the order and judgment of the Court of Appeals be made the order and judgment of the Supreme Court and that the judgment entered thereon on June 3, 1952 by the Appellate Division be affirmed.

Subsequent to the New York court judgments in 1952 and 1953, it appears that further steps have been taken to effect the merger of the Congregational Christian Churches and the Evangelical and Reformed Church. The General Council, or its Executive Committee, met at various times in 1954 through 1956 and on June 23, 1956 elected 357 of its members delegates to attend the first meeting of the General Synod of the United Church of Christ which was held in Cleveland, Ohio on June 25 and 27, 1957. The minutes of that meeting described it as the "Uniting General Synod of the United Church of Christ." It appears, however, that no constitution for the united group has yet been enacted and that the group presently is operating under the final revision of the Basis of Union.

The complaint in the present action was filed June 20, 1957. The named parties plaintiff here include four Congregational Churches and ten individuals, who include ministers and members of the Congregational Christian Churches, members of the General Council, corporate members of the Board of Home Missions of the Congregational Christian Church, corporate members of the American Board of Commissioners for Foreign Missions, and members of the Annuity Fund for Congregational Ministers. The action is brought as both an individual action and as a representative action on behalf of all churches, ministers and members similarly situated. It is alleged it would be impractical to bring in all members of the class who would constitute all or part of some 5,500 churches with over 1,379,000 members. None of the plaintiffs are citizens of New York State. Parties defendant include, in addition to the General Council, which is sued through its Treasurer, Mr. Beach, the Evangelical and Reformed Church and various Congregational boards, corporations, societies and funds named above, and the American Board of Commissioners for Foreign Missions.

The present complaint has been described briefly in the opening paragraphs of this opinion and it consists of some 44 pages in total, with 33 pages of allegations and 11 pages of prayers or declarations. The complaint seeks to have the "Basis of Union" and "Interpretations," and many of the various provisions therein, declared invalid and void. It asks the Court to declare that the various Congregational boards, societies and funds may not merge with the counterpart groups and corporations of the Evangelical and Reformed Church. The complaint also complains that the Basis of Union makes no provision in the various Congregational agencies for those Congregational Christian Churches who choose to remain outside of the United Church. It also asks that no church, or member of any church, be held to have joined the United Church of Christ except by affirmative action on its part. The complaint asks such further declarations and reliefs as may be appropriate.

The motion made by the General Council and the Congregational defendants is based fundementally upon the argument that the validity of the Basis of Union has already been the subject of a comprehensive trial on the merits and has been passed on and sustained by the Appellate Division and the Court of Appeals of the State of New York. Cadman Memorial Cong. Soc. v. Kenyon, supra. Movants contend that the Cadman action operates as *res judicata* or collateral estoppel of the plaintiffs here.

The first question which will have to be considered in connection with this contention is: What was the adjudication in the Cadman case? That case was brought, as Judge Froessel in his dissenting opinion pointed out, "to prevent the proposed union [of the churches], or, failing in that * * * for a declaratory judgment as warranted by the pleadings and admissions of the parties." 306 N.Y. at page 167, 116 N.E.2d at page 487. The trial court had granted a declaratory judgment declaring the union invalid. This was reversed by the Appellate Division and the Appellate Division's opinion was affirmed by the Court of Appeals. In affirming the dismissal of the com-

plaint, the Court of Appeals did so upon two grounds. The first ground was that the plaintiffs at the trial had failed to establish that the Basis of Union interfered with the Congregational faith or manner of worship, and failed to establish any direct or beneficial interest in and to the unrestricted funds of the General Council, its various boards, agencies and instrumentalities, and failed to show that any such general funds were to be used for other than authorized charter purposes. The second ground was that there was no basis for granting a declaratory judgment against the various corporate boards and agencies or the Evangelical and Reformed Church as they were not parties to the action and were not before the court.

■■ Certainly, therefore, the adjudication was not binding upon the various corporate boards and agencies or the Evangelical and Reformed Church. They have been made parties in this action, and as to them the adjudication of the New York court would not be *res judicata* since they were not present in that action. Nor are the plaintiffs the same in this action as they were in the Cadman action. In this action different churches are named as parties plaintiff and there are included as parties plaintiff certain ministers and members. It is the contention of the plaintiffs that they have interests in and to the funds of the General Council, its various boards, agencies and instrumentalities, which the Cadman Church did not have. It is further asserted by plaintiffs that the facts at the time of bringing this suit and which are to be tried here are substantially different

from the facts that were considered by the New York courts in the Cadman litigation. These contentions are disputed by the defendants. Whether the plaintiffs have such separate interests from those of the Cadman Church, and whether the facts before this Court are materially different, present, however, questions of contested fact which cannot be determined on a motion for summary judgment. The adjudication in the Cadman case was no more than that the plaintiffs then before the court had failed to establish a sufficient interest in such funds of the General Council as to warrant the court in granting declaratory judgment. If the plaintiffs in the present action have an interest in those funds which is separate and distinct from that of the Cadman Church, then they are not bound by the adjudication in the Cadman case. If the rights of the various corporate boards and agencies and of the Evangelical and Reformed Church were not considered by the New York court in the Cadman case because those parties were not before the court, then such adjudication is not binding upon those corporate boards and agencies and is not an adjudication as to them.

■ Irrespective, therefore, as to whether the Cadman action was a true class action, hybrid class action or "spurious" class action,[1] the adjudication in the New York court was not binding upon the present plaintiffs or as to the present defendants under the present posture of the pleadings and contested facts. The defendants may, of course, plead *res judicata* and raise the issue at the trial, and if they are able to show that the in-

1. See 3 Moore, Federal Practice, par. 23, 2d Ed. 1948. Cf. Stella v. Kaiser, 2 Cir., 1954, 218 F.2d 64, with All American Airways v. Elderd, 2 Cir., 1954, 209 F.2d 247; Dickinson v. Burnham, 2 Cir., 1952, 197 F.2d 973, certiorari denied, 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678. See Smith v. Swormstedt, 1853, 16 How. 288, 57 U.S. 288, 14 L.Ed. 942; Supreme Tribe of Ben Hur v. Cauble, 1921, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22. See N.Y.Civil Practice Act, § 195; New York State Rys. v. Security Trust Co., 1929, 135 Misc. 456, 238 N.Y.S. 354, affirmed 228 App.Div. 750, 238 N.Y.S. 887; Brenner v. Title Guarantee & Trust Co., 1937, 276 N.Y. 230, 11 N.E.2d 890, 114 A.L.R. 1010; Northwestern Tel. Co. v. Western Union Tel Co., 1950, 197 Misc. 1075, 99 N.Y.S.2d 331. See also Note, 67 Harvard L.Rev. 1059 (1954); Developments in The Law—Multiparty Litigation in the Federal Courts, 71 Harvard L.Rev. 874, 928 (1958).

terests of the plaintiffs in the Cadman action were the same as the interests of the plaintiffs in this action, then that issue can be determined by the trier of the facts. However, on the record now before this Court on this motion, it cannot be said that there is "no genuine issue as to any material fact." Rule of Civil Procedure 56(c).

Defendants contend that the Committee for the Continuation of Congregational Christian Churches was and is the real party in interest and in control of both the Cadman case and the present litigation. They contend that the present plaintiffs are and were affiliated with the Continuation Committee and that both actions have had common sponsorship and have been brought on behalf of the same group, and under common planning, direction and financing, and that, therefore, the present plaintiffs are barred under the doctrine of collateral estoppel, as well as by *res judicata*, from litigating the same issues litigated in the Cadman case. Plaintiffs urge that the parties and the issues are not the same and contend that the role played by the Continuation Committee was not one of controlling either the Cadman case or the present litigation. Affidavits and depositions have been presented on this issue. The most that can be said, however, is that strong issues of fact exist as to the relationship of the Continuation Committee both to the Cadman case and the present litigation. If there was a common sponsorship for both actions, and the plaintiffs in this action were in fact participants in the Cadman action and actually represented therein, then there might be a basis for contending that the plaintiffs are barred by collateral estoppel. However, the facts as to the Continuation Committee are not undisputed and those facts cannot be determined on this motion but should be determined, if properly pleaded, at the trial where the parties will have an opportunity for examination and cross-examination.

The motion for summary judgment, in so far as it raises issues of *res judicata* and collateral estoppel, must be denied.

### The Issue of Jurisdiction Over The Subject Matter of the Action

Movants additionally contend that this Court is without jurisdiction in this case, or should decline jurisdiction, in that jurisdiction has been improperly or collusively contrived.[2] Movants assert that the arrangement of parties in the suit is merely a contrivance between friends for the purpose of founding a jurisdiction which would not otherwise exist. Essentially this contention is based on the argument that the Continuation Committee and its members are the sponsors of this action and have deliberately selected non-resident plaintiffs from amongst their number and persuaded them to bring this suit.[3] Movants contend that the fact that only non-resident churches, ministers and members appear as plaintiffs, shows in itself collusion that defeats federal diversity jurisdiction.

■ It is, of course, clear that all of the plaintiff churches, members and ministers are non-residents of New York State, as is required for federal diversity jurisdiction. There is also, as pointed out in the discussion above on the issue of *res judicata*, an issue of fact as to the role of the Continuation Committee. However, it appears from the complaint and the issues there presented, that plaintiff churches, ministers and church members are real parties in interest, with substantial rights involved in the outcome of this litigation. It does not appear from the papers submitted on this motion, that the plaintiffs in this suit are without control or direction of the action. The fact that others may have

---

2. 28 U.S.C.A. § 1359 provides:
   "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

3. Movants allege that all but two of the plaintiffs are represented on the Continuation Committee, either by themselves or through their churches.

aided the plaintiffs in the financing of this suit or lent support to the bringing of this litigation, and the fact that plaintiffs may have sought to confine their number to non-residents in order to meet the requirements for federal diversity jurisdiction, does not, under the circumstances here, constitute such collusion as would cause the federal courts to refuse to entertain the action. Cf. Wheeler v. City and County of Denver, 1913, 229 U.S. 342, 33 S.Ct. 842, 57 L.Ed. 1219; Aiken v. Insull, 7 Cir., 1941, 122 F.2d 746, certiorari denied, 315 U.S. 806, 62 S.Ct. 638, 86 L.Ed. 1205; Benedict v. Seiberling, D.C.N.D.Ohio 1927, 17 F.2d 841; with City of Dawson v. Columbia Ave. Saving-Fund, Safe Deposit, Title & Trust Co., 1905, 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713; Farmington Village Corp. v. Pillsbury, 1885, 114 U.S. 138, 5 S.Ct. 807, 29 L.Ed. 114. See Reviser's Note following 28 U.S.C.A. § 1359; Smith v. Sperling, 1957, 354 U.S. 91, 97, 77 S.Ct. 1112, 1 L.Ed.2d 1205, note 4; 35 C.J.S. Federal Courts §§ 70, 93.

■■■ Movants also ask that the Court exercise its discretion not to consider this action under the Federal Declaratory Judgment Act, on grounds of the prior litigation in the Cadman suit and in light of the role played by the Continuation Committee. However, the Court's discretion to decline jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is not to be exercised arbitrarily, and the present litigation, which involves substantial rights of many parties from many different states, would appear a particularly appropriate action for consideration under that statute and under the Federal Rules for the bringing of representative actions. Rule 23 of the Federal Rules of Civil Procedure. See Purcell v. Summers, 4 Cir., 1942, 126 F.2d 390, 393–394, certiorari denied 317 U.S. 640, 63 S.Ct. 32, 87 L.Ed. 516; Borchard, Declaratory Judgments, 2d Ed., pp. 312–314, 685–686.

The contention has also been made that the complaint should be dismissed in that it deals with purely ecclesiastical matters which this Court may not consider, but it is clear that substantial civil rights and rights of property are alleged to be involved in this case, and the complaint deals with a group of matters which are not purely ecclesiastical in nature. This contention of defendants cannot, therefore, succeed on the present state of the pleadings and contested facts.

### The Issue of Laches

■■ Defendant Evangelical and Reformed Church seeks dismissal on grounds of the laches of plaintiffs in bringing this suit against it in that plaintiffs have known for over eight years of the participation of the Evangelical and Reformed Church in the proposed merger with the Congregational Christian Churches into the United Church of Christ, and that since 1949 the Evangelical and Reformed Church has expended substantial monies, time and effort in the effecting of this merger. However, plaintiffs contend that this action is brought upon facts as they existed in 1957 and it is a matter of record that the Uniting General Synod, which was to begin effectuation of the merger between the two churches, was held in June of 1957, and that the United Church has not as yet adopted a constitution. Under the circumstances, and under the present posture of the facts, it appears that there is not sufficient merit to this motion of defendant to warrant the granting of dismissal as to it.

### The Motion to Dismiss by the American Board of Commissioners for Foreign Missions

Defendant American Board of Commissioners for Foreign Missions has moved to dismiss the action as against it for failure of jurisdiction, alleging that the defendant is not doing business within the Southern District of New York,[4] or,

4. 28 U.S.C. § 1391(c) provides:
"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

alternatively, that this is not a suitable forum in which to be heard.

The Court finds that the American Board is a Massachusetts corporation with a Massachusetts charter, having its principal office at 14 Beacon Street, Boston, Massachusetts; that it is the principal foreign missionary agency which has represented the Congregational Christian Churches in foreign mission work; that corporate members of the American Board included, in 1956, 250 members-at-large, plus delegates of the 1956 General Council of the Congregational Christian Churches; that American Board meetings have been held in conjunction with meeting of the General Council; that the Missions Council of New York, which is an unincorporated body, is the joint agent of, among others, the American Board of Commissioners for Foreign Missions, The Board of Home Missions and The Congregational General Council.

The Missions Council has its principal offices in New York and it is conceded that it does business here. The Missions Council is the fund raiser for the American Board and distributes literature and answers inquiries on behalf of the American Board. Some of the literature is stamped with the imprint of the American Board. The Missions Council also acts as a promotional and educational unit for the organizations it represents, including the American Board, and puts out a magazine on their behalf. The American Board concedes that it is supported to the extent of about 50% of its annual income, or over $1,000,000, by the Missions Council, and that it in turn contributes some $200,000 a year to the budget of this agency. About 8% to 10% of the funds raised are obtained in New York, although contributors send the money directly to the American Board's offices in Massachusetts. It appears that the members of the Prudential Committee, which is the Board of Directors of the American Board, are members of the Missions Council and attend Council meetings in New York. Officers of the Missions Council have been listed in some of the American Board's publications as if they were officers of the American Board, and the Treasurer of the American Board is Treasurer of the Missions Council. The American Board is listed in the New York telephone directory with a phone and address at the office of the Missions Council. About 100 members of the American Board live in New York and two are members of the Prudential Committee.

Plaintiffs assert that the defendant American Board also has other agents carrying on a substantial part of its work who are resident in New York, including the Congregational Christian Service Committee of New York, which is alleged to be composed of twenty-four members of the Prudential Committee of the American Board, and the "Office of Communications." The former is a corporation; the latter is an unincorporated agency.

Plaintiffs contend that the Missions Council, as shown by the above facts, is not an independent association but is the agency of its constituent members, including the defendant American Board, and that actions by the Missions Council are in reality the actions of the American Board and are in large part carried on within the Southern District of New York. Plaintiffs say the American Board carried on these fund raising and promotional activities itself prior to the formation of the joint agency and that the sum total of facts is sufficient to find that the American Board of Commissioners for Foreign Missions is doing business in New York and is subject to this Court's jurisdiction.

From the facts stated above, it becomes clear that the American Board of Commissioners for Foreign Missions, through its agent, is active in this jurisdiction in the solicitation of a substantial part of its funds and in promotional and educational activities calculated to disseminate information about, and encourage support for, its foreign missions activities. These substantial fund raising and promotional activities, together with the other activities and agencies of the

American Board, are sufficient for this Court to find that the American Board of Commissioners for Foreign Missions is doing business in this jurisdiction and is within the jurisdiction of this Court. Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 1949, 175 F.2d 184, certiorari denied 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; Satterfield v. Lehigh Valley R. Co., D.C.S.D.N.Y.1955, 128 F. Supp. 669; Nugey v. Paul-Lewis Laboratories, D.C.S.D.N.Y.1955, 132 F.Supp. 448; Lehn & Fink Products Corp. v. Milner Products Co., Inc., D.C.S.D.N.Y. 1953, 117 F.Supp. 320; Allegue v. Gulf & South American S. S. Co., Inc., D.C. S.D.N.Y.1952, 103 F.Supp. 34; Healing v. Isbrandtsen Co., D.C.S.D.N.Y.1952, 109 F.Supp. 605. See also People v. Jewish Consumptives' Relief Society, Sup.Ct. 1949, 196 Misc. 579, 92 N.Y.S.2d 157.

It is also clear that the American Board of Commissioners for Foreign Missions has sufficiently important activities and contacts with this jurisdiction to make it fair and equitable that it should be a defendant in a suit here. See McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Fund raising and educational and promotional work in themselves are certainly important activities of a foreign mission group. Also, the Basis of Union allegedly has substantial connection with New York churches and New York parties defendant to this action, and part of plaintiffs' claim against the American Board of Commissioners for Foreign Missions appears to be grounded on contributions made or alleged to have been made during the course of New York fund solicitation.[5] Nor do substantial inconveniences appear. Resultantly, the American Board's motion to dismiss for failure of jurisdiction must be denied.

The American Board also urges that this Court should decline jurisdiction of this action against it on the ground of *forum non conveniens,* and by exercise of its discretion under the Declaratory Judgment Act. 28 U.S.C. § 2201. Movants say that a trial will involve issues which relate to the internal affairs of a Massachusetts corporation, with its principal activities managed from Massachusetts, and that considerations of comity, convenience of parties and witnesses and the unenforceability of a remedy, if granted, would make a trial in a Massachusetts court fairer, more effective and best suitable to the ends of justice.

As discussed at the beginning of this opinion, the complaint in this action deals with the validity and construction of the "Basis of Union" and "Interpretations," relating to the proposed merger of the Congregational Christian Churches with the Evangelical and Reformed Church, and with the rights and legal relations of plaintiffs as affected by that agreement. As to the American Board of Commissioners for Foreign Missions the complaint alleges, in paragraph Fifty-three, that the American Board is, with others, an agent, instrumentality and trustee of each Congregational Church and its members, and cannot unite with others unless those churches so unite. In paragraph Sixty-seven, the complaint states that the Basis of Union and Interpretations "purports to unite The American Board of Commissioners for Foreign Missions· of the Congregational Christian Church with the Board of International Missions of the Evangelical and Reformed Church," and that the American Board has taken steps to implement such provisions and has amended its charter to enable it to become an agency of the "United Church of Christ." The complaint states that the American Board intends to transfer all of its income, assets and functions to this new agency. On page 36 of the complaint, par. I(c) (2), the prayer is made that the provisions of the Basis of Union and Interpretations, purporting to require the uniting of the American Board of Commissioners for Foreign Missions with the Board of In-

5. See Paragraph Fifty-three of the complaint.

ternational Missions, be declared invalid and void. On page 43 of the complaint, par. III(14), plaintiffs ask the finding that until it be determined that the Congregational Churches may unite, and have united, with the United Church of Christ, the American Board may not unite with the United Church of Christ or with a related board of the Evangelical and Reformed Church, or have new corporate members elected by the General Synod of the United Church, or amend its by-laws and charter to conform to those of the board of the United Church.

Under the circumstances the Court finds that it would not be appropriate to dismiss the action as against the American Board on grounds of *forum non conveniens*. The principle of *forum non conveniens* allows the Court, in its discretion, to reject jurisdiction where warranted by considerations of justice, convenience of the parties and of the court, access to proof and availability of witnesses. But, unless the balance is strongly in favor of the movants, plaintiff's choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055; Koster v. American Lumbermens Mutual Casualty Co., 1947, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067. Movant has argued this motion as if it were the only party defendant to this action. This, of course, is not the case. The action is concerned with agreements to which the American Board is alleged to be a party, and therefore the action against the American Board is not exclusively concerned with issues relating to the internal regulation of that corporation, but is also concerned with the exercise of the powers of the American Board and its rights and liabilities under contracts. As the Supreme Court pointed out in Koster v. Lumbermens Mutual Co., supra:

"* * * many kinds of cases may 'relate to internal affairs of a corporation', and that fact does not have the same significance as to the doctrine of *forum non conveniens* in

all settings." Id., 330 U.S. at page 526, 67 S.Ct. at page 833.

and

"There is no rule of law * * * which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor * * *." Id., 330 U.S. at page 527, 67 S.Ct. at page 833.

See also Williams v. Green Bay & W. R. Co., 1946, 326 U.S. 549, at page 553, 66 S.Ct. 284, 90 L.Ed. 311.

It appears that common questions of law and fact as to the interpretation and validity of the "Basis of Union" and "Interpretations" may arise which will affect the American Board as well as other defendants and the plaintiffs here. The American Board may be a necessary party to this action, Cadman Memorial Cong. Soc. v. Kenyon, supra; see also 3 Moore, Federal Practice, Par. 19, but even if not, it would appear more just and efficient that all common and complex issues affecting the parties now before the Court be determined in this one litigation.

Other factors of convenience do not affect this major consideration. It may be inconvenient for the books and records of the American Board to be introduced in this action since they are presently in Massachusetts, but possible witnesses and officers of the American Board appear to be from all parts of the United States as well as from Massachusetts and the bringing of this action in New York would not seem to impose an additional or unfair burden as to them. Several of the defendants in this action include New York corporations and associations, and other parties are from all over the United States. Trial in Massachusetts might effect inconveniences as to these parties and their witnesses if it were necessary to have them present in a suit against the American Board in Massachusetts.

The ultimate inquiry under the principle of *forum non conveniens* is where trial will best serve the conven-

ience of the parties and the ends of justice. Koster v. Lumbermens Mutual Co., supra, 330 U.S. at page 527, 67 S.Ct. 828. Tested by these considerations, the Court finds that movant should be retained in this action and the motion to dismiss on grounds of *forum non conveniens* should be denied.

All motions of the defendants are therefore denied. In making this determination the Court wishes to make it clear that it is not passing upon the principal issues involved in the litigation; all that it is deciding is that those issues cannot be determined on a motion but must await the trial of the action.

The Court feels that it should not conclude this already too long opinion, without pointing out to the litigants, as it did to counsel on the argument, that it is unfortunate that ministers and church members who purport to abide by Christian principles should engage in this long and expensive litigation. Five years of litigation have already taken place in the New York State courts and apparently many more years of litigation will result in the federal courts. The papers submitted on the motion indicate that half a million dollars have already been expended by the parties in the litigation of the past; the present litigation may be equally expensive.

It would seem to a Christian layman that if the ministers and churches involved in this litigation would use more Christian charity and understanding it would be possible for them, as men of good will actuated by high principles, to adjust their differences so that their time and money might be devoted to the promotion of Christianity rather than to the maintenance of acrimonious and expensive litigation. The Court, in all humility, urges the parties to give prayerful consideration to what Saint Paul said in his epistle to the Corinthians [6] when similar controversies arose to trouble the early church.

---

6. 1 Cor. 6: 1, 5-7.
"Dare any of you, having a matter against another, go to law before the unjust, and not before the saints?
    *    *    *    *    *
"I speak to your shame. Is it so, that there is not a wise man among you? no, not one that shall be able to judge between his brethren?

"But brother goeth to law with brother, and that before the unbelievers.
"Now therefore there is utterly a fault among you, because ye go to law one with another. Why do ye not rather take wrong? * * *"