306 N.Y. 151 (1953)
Cadman Memorial Congregational Society of Brooklyn et al., Suing on Behalf of Themselves and Other Congregational Christian Churches Similarly Situated, Appellants,
v.
Helen Kenyon, as Moderator of The General Council of The Congregational Churches of the United States, Respondent.
Court of Appeals of the State of New York.
Argued April 21, 1953.
Decided December 3, 1953
Kenneth W. Greenawalt, Joseph Diehl Fackenthal, Martin A. Schenck and John H. Barber for appellants.
Charles H. Tuttle, Loren N. Wood, Truman H. Luhrman and Loren T. Wood for respondent.
Orrin G. Judd, Clarence L. Sager, Ruth I. Wilson and Saul A. Shames for International Convention of Disciples of Christ, and Walter Bruchhausen for New York Congregational Christian Conference, Inc., amici curiaelig;, in support of respondent's position.
LEWIS, Ch. J., DESMOND and FULD, JJ., concur with DYE, J.; FROESSEL, J., dissents in opinion in which CONWAY, J., concurs.
*158 DYE, J.
This controversy, here in an appeal as of right, concerns the methods and procedures under which the Congregational Christian Churches of the United States and the Evangelical and Reformed Church plan to unite under the name of United Church of Christ. Both are Protestant in faith and polity and both possess a rich heritage from the past.
The Congregational Christian Churches trace their origin to the Reformation in England dating to 1581, and in this country dating to the Puritans in 1620. By tradition and usage the approximately fifty-eight hundred churches in America are independent, self-governing fellowships without any central ecclesiastical control. They have, however, in order to carry on a religious program commensurate with present day requirements, organized themselves into district associations, State conferences and conventions and a General Council national in scope.
The Evangelical and Reformed Church is a Protestant denomination of national scope consisting of congregations, synodical units and an ecclesiastical governing body having jurisdiction and control over such congregations and their members, ministers and organizations. It was founded in 1934 by the union of the Reformed Church in the United States dating to 1725, and the Evangelical Synod of North America dating to 1840. It presently comprises approximately twenty-eight hundred churches having a membership of over seven hundred thousand persons. The two uniting groups thus aggregate about eighty-six hundred churches with a membership of about one million eight hundred and fifty thousand persons.
*159 The action is in equity. It is brought by the Cadman Memorial Congregational Society of Brooklyn, a New York religious corporation, and the Cadman Memorial Church, an unincorporated religious body affiliated with the Cadman Memorial Congregational Society. The former has custody and control of the temporalities and property and the latter conducts services of worship and other religious activities and meetings in the church edifice located in Brooklyn. For convenience, the plaintiffs will hereinafter be referred to either as the "Cadman Church" or "plaintiff".
According to the record, the Cadman Church occupies a unique place among Congregational Christian Churches being not only one of the oldest in America, but one of the largest. It is a union of the former Central and Clinton Avenue Congregational Churches of Brooklyn in which the members of the Simpson Methodist Church have joined for purposes of worship only. Its name honors the memory of a distinguished former preacher, the Reverend S. Parkes Cadman. It is congregational in polity and, like other Congregational Christian Churches, is concededly independent and autonomous and not subject to the control of any other ecclesiastical authority. It is a member of the New York City Congregational Church Association, Inc., and the New York Congregational Christian Conference, Inc., and is represented in the voting membership of the defendant General Council.
The defendant General Council of the Congregational Christian Churches of the United States, sued in the name of its Moderator and Presiding Officer, is an unincorporated association with its principal office and place of business in New York City. Whenever referred to hereinafter it will be called either the "General Council" or "defendant".
The General Council is a voluntary association, national in scope, having a constitution, by-laws and standing rules. According to its constitution, membership is made up of both laity and clergy representing individual Congregational Churches, local associations and district conferences or conventions and affiliated colleges and theological seminaries, as well as certain other designated groups or classes of persons, such as ex-officio members of the conferences or *160 conventions, representatives of home and foreign missions, honorary members, ecumenical members and certain others, by invitation, the latter enjoying the privilege of the floor but having no vote.
By constitutional pronouncement it stands "for the autonomy of the local church and its independence of ecclesiastic control", "the fellowship of churches, united in district, state and national bodies for counsel and co-operation", "the unity of the Church of Christ". It recognizes such local independence in matters of Christian faith and dogma by declaring that it finds "in the Bible the supreme rule of faith and life, but recognize[s] wide room for differences in interpretation. We therefore base our union upon the acceptance of Christianity as primarily a way of life and not upon uniformity of theological opinion or any uniform practice of ordinances" (Constitution).
The General Council has for its purpose: "to foster and express the substantial unity of the Congregational Christian churches in faith, purpose, polity and work; to consult upon and devise measures and maintain agencies for the promotion of the common interests of the kingdom of God; to co-operate with any corporation or body under control of or affiliated with the Congregational or Christian churches or any of them; and to do and to promote the work of these churches in their national, international, and interdenominational relations, and in general so far as legally possible to perform on behalf of the United churches the various functions hitherto performed by the National Council for the Congregational churches and by the General Convention for the Christian churches, it being understood that where technical legal questions may be involved the action of the separate bodies shall be secured."
The Basis of Union, with Interpretations constituting the subject matter of this controversy, is the result of several years of study and negotiation between the Commission on Interchurch Relations and Christian Unity representing the General Council (By-Law, No. III, subd. 8) and a committee representing the Evangelical and Reformed Church, its final form being adopted at a joint meeting of the commission and the committee held at Cleveland, Ohio, on January 22, 1947. Thereafter the General *161 Council submitted it to the individual Congregational Christian Churches and State conferences for advice. Notwithstanding that the recommended 75% of the individual churches entitled to vote did not formally approve, nonetheless more than 72% of those voting did approve, as did 90% of the associations and district conferences. Regarding this as substantially affording the advice which it sought, the General Council, at its meeting held in February, 1949, voted (757 for and 172 against) to consummate the plan and so advised the Evangelical and Reformed Church which likewise approved. Such action by the latter church is mentioned by way of interest, although of no consequence in this litigation as it is not a party to the within action.
According to its express terms, the Basis of Union recognizes the local church as the basis of organization, and that the conferences, conventions and associations shall "conduct its business in its own way" by providing that each congregation, association and conference "has the right of retaining or adopting its own charter, constitution, by-laws and other regulations which it deems essential and proper to its own welfare"; in other words that there will be no intrusion in or abridgment of traditional congregational polity and usage through fellowship of independent autonomous congregations, free of authoritative control.
The plaintiff seeks a judgment declaring that the General Council has no power or authority to consummate the Basis of Union on its behalf or other Congregational Christian Churches, and that any Congregational Christian Churches uniting with the proposed United Church of Christ, as proposed in the Basis of Union "will cease to be churches of that [Congregational] fellowship and denomination and cease to have any right or interest in or any connection with the corporations, commission board, agencies and instrumentalities representing or acting for or under the direction and control of the Congregational Christian Churches or the funds and properties thereof" and that any Congregational Christian Churches who do not join with the United Christian Church, will "remain the Congregational Christian Churches entitled to all the rights and privileges presently possessed and enjoyed by such churches" including "the control and benefit of all the corporations, commissions, *162 boards, agencies and instrumentalities which now represent and act for or are under the direction of the present Congregational Christian Churches" and that the United Church and all those who join with it shall have no interest therein.
As an incident thereto it seeks injunctive relief to restrain the General Council, its members and officers, from consummating the Basis of Union and to restrain the General Council, its agencies and instrumentalities from merging or transferring and mingling their funds and assets with the Evangelical and Reformed Church or with the United Church of Christ.
According to its complaint the plaintiff is proceeding upon the theory that the proposed United Church of Christ is and will be so alien and different in structure and polity that fundamental congregational usage and practice will be wholly lost and destroyed. By way of showing such fundamental difference it points out that the United Church of Christ will be a general or authoritative church governed through various ecclesiastical bodies having degrees of sovereignty as distinct from the existing voluntary and advisory associations, conferences, conventions and General Council; that the individual churches and members will be subordinate to control providing, as it does, for a central authority for the engaging and dismissal of ministers, the establishment of a system of church judicatories and for a united or uniform confession of faith in place of the absolute independence and freedom now and heretofore enjoyed in such matters by Congregational Christian Churches. The plaintiff objects also to the prospect of a constitution for or applicable to Congregational Churches as well as other differences which more fully appear in the Basis of Union. This, in sum, is to say that because of the difference in structure and polity of the two uniting bodies such a union will destroy or materially alter the nature of Congregationalism.
The General Council in its answer concedes that under the Basis of Union the plaintiff and any other Congregational Christian Church, association or conference, or their members, would not be subject in respect "to either their spiritual or temporal affairs to any control by the proposed United Church of Christ"  that the proposed expression of faith set out in the Basis is not to be considered a substitution for any confession of faith which may be used in any congregation and "shall *163 be regarded as a testimony and not as a test" and that freedom of worship and education at present enjoyed "will be preserved in the United Church * * * [and] not * * * abridged". These clear and unequivocal admissions afford assurance that the proposed union will in no way change the historical and traditional pattern of the individual Congregational Christian Church. They serve to remove all fear that any action taken by the General Council leading to a consummation of the Basis of Union will in any way obligate the individual church to join in the Union except through its own voluntary action. Every possible assurance is given that each member church will continue to possess the same freedom of faith and manner of worship as heretofore enjoyed  that there will be no interference in or abridgment of congregational usage and practice. In short, there is no power and none is claimed by which the General Council can compel or intends to compel the plaintiff Cadman or any other nonassenting church to join the Union unwillingly or impose upon them a change of faith or doctrine. Union depends on voluntary action freely taken by independent autonomous churches. If any doubt remains, it seems abundantly clear from this record that the very nature of Congregationalism, surviving as it has the vicissitudes of time for nearly four hundred years, assures the integrity of the individual Congregational Christian Church, its faith and independence. Under these circumstances no ecclesiastical question is presented (cf. Watson v. Jones, 13 Wall [U.S.] 679).
We turn then to a consideration of whether the consummation of the Basis of Union will interfere with any alleged property right possessed by the plaintiff in and to funds and assets now held and controlled by the General Council, its boards, agencies and instrumentalities which, it is estimated, aggregate approximately $60,000,000.
The plaintiff alleges that if the Basis of Union is consummated such funds and other assets will "be diverted from the uses and purposes for which they were set up, created and established and for which they have heretofore been used". The complaint goes on to allege that such diversion will deprive the plaintiffs of representation in the General Council to which they are presently entitled; will deprive them of their interest in the administration of the funds and assets, by mingling such funds *164 with funds and assets of other and unrelated religious organizations, impose upon them liabilities and burdens alien to and different from those now incident thereto and deprive the plaintiff of its lawful right in the application and use thereof.
Before proceeding to a discussion of the merits of the allegation thus made, we note that the parties agree that funds and properties held by the Cadman Church are in no way involved in or threatened by the proposed union; that the funds held by the General Council and any of its agencies, boards and instrumentalities under express trusts, including pension funds, will not be affected (Basis of Union, art. III, § H; art. IV, § L, subd. 1; art. IX, §§ A, C).
The dispute concerns rather the appellants' alleged beneficial interest in general funds belonging to and used by various boards and agencies in carrying on their respective functions. Such funds are raised through per capita and apportionment systems applicable to individual churches and their members. No individual church or member is required to contribute anything  it is entirely voluntary and, in fact, the Cadman Church for years has refused to pay per capita dues on the ground that it is not obliged and cannot be compelled to do so. It has, however, concededly contributed other amounts "in lieu of" the per capita assessment. The apportionment plan is also entirely voluntary and benevolent. The general practice, we are told, is for the individual churches to send their voluntary general contributions to the State Conference and the funds which the State Conference does not use are turned over to the General Council, its agencies, boards and instrumentalities, who use such funds in carrying on a world-wide program of Christian outreach. This has many aspects and to assure successful results, the work in its various categories is done through boards, agencies and instrumentalities created for the express purpose of performing a specified phase of the program. They are usually corporate in form and while the name "Congregational" appears in most of such agencies, their express purposes are nonetheless very broad and in no way limited to furthering any particular religious viewpoint, dogma or confession of faith. For instance, the American Board of Commissioners for Foreign Missions (a Massachusetts corporation) has for its purpose the extension of Christ's Kingdom abroad, without making any *165 reference to Congregational Christian Churches, to the General Council or any denomination whatsoever but, on the contrary, and it is significant here, it may unite with others in the manner provided in the by-laws including "election by a council, synod * * * representing any churches * * * located within the United States".
The Board of Home Missions of the Congregational and Christian Churches (a corporation chartered in New York, Connecticut and Massachusetts) is much the same. It too may carry on its work "either directly or through other corporations having similar objects in the United States and in other countries". We may note also that the Congregational Board of Ministerial Relief (a Connecticut corporation organized by Special Act in 1885 and amended in 1933) has for its purpose the relief of needy Congregational ministers. In addition, its benevolences are available to "ministers of other churches affiliated, merged or consolidated with the Congregational Churches and after their decease for the benefit of their needy families, in accordance with resolutions and declarations adopted or made, from time to time, by the General Council * * * or by any body which may succeed to the present functions of that council; and said corporation may cooperate with any other corporation or body which is under the charge and control of the Congregational and Christian churches in the United States or of churches at the time affiliated with them".
In fact the Corporation for the General Council of the Congregational Christian Churches of the United States, a financial corporation organized under a Special Charter given by the Legislature of Connecticut for the purpose of providing and administering a pension fund for retired Congregational ministers (its principal asset being the Pilgrim Memorial Fund, a trust which all agree will not be affected by the proposed union), provides that: "If hereafter any other body of Christians shall have united with the Congregational and Christian churches by union, merger, affiliation or otherwise, effected by or with the consent of said General Council, said Corporation may exercise its powers for the use and benefit of the churches or other institutions of the united or merged denomination, or of such affiliated body." Other corporations may be mentioned such as The American Missionary Association, The Congregational *166 Home Missionary Society, The Congregational Church Building Society and The Congregational Sunday School Extension Society, all New York corporations, The Congregational Education Society, a Massachusetts corporation, The Annuity Fund for Congregational Ministers and The Retirement Fund for Lay Workers, both New Jersey corporations, but need not be discussed more than to say that in most instances their charters give them very broad and general powers which would not be violated by uniting with any other similar charitable and religious organization. The principle of voluntariness has long been a motivating force in Congregational fellowship.
Notwithstanding that the above-listed boards and agencies are corporations authorized and existing under the laws of several different States, the plaintiffs nonetheless contend that such boards and agencies have in fact no separate and independent status because their boards of trustees, officers and administrators are drawn from the membership of the General Council and that their activities are, for all practical purposes, controlled and supervised by the General Council  that diversion of their funds and assets and mingling of same with the funds of others is an interference to its detriment in a property interest belonging to the Cadman Church and other nonassenting churches. This, however, is not established in fact as the proof shows and, it is conceded, the Cadman Church has not contributed any funds, except as we have seen, for other than a general corporate purpose and these voluntarily and without restriction as to use or application. Under such circumstances it must be assumed that such funds were general gifts for use by the corporations in connection with their general corporate purposes. Such voluntary unrestricted contributions for a general charitable and religious purpose create no proprietary or beneficial interest warranting the civil courts in interfering in their expenditure so long as it appears that such use and application is not violative of charter purposes. As this court has previously observed: "Gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest, or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense" (Bird v. Merklee, 144 N.Y. 544, 550; see, also, Wetmore v. Parker, 52 N.Y. 450; Johnston v. Hughes, 187 N.Y. 446).
*167 Furthermore, and we repeat, all agree that no trust funds or assets, including pension funds, held by or under the control of the General Council or any board or agency or by any nonassenting church are in any way affected by the proposed union. Absent a showing that any fiduciary obligation imposed by the charters or certificates of incorporation of any board or agency will be violated or that such violation is imminent or threatened, there is no basis or necessity for a declaratory judgment enjoining the General Council in any respect, nor may any restraining order issue against the various corporate boards and agencies, the Evangelical and Reformed Church or the United Church of Christ, as they have not been made parties defendant and are not before the court. Such a remedy is available only in an appropriate action, which this is not (Civ. Prac. Act, §§ 193, 473; Manhattan Stor. & Warehouse Co. v. Movers & Warehousemen's Assn., 289 N.Y. 82; Ivory v. Edwards, 304 N.Y. 949). On this record, the proof having established that the Basis of Union is voluntary and in no way interferes with Congregational faith or manner of worship, and the plaintiffs having failed to establish any direct or beneficial interest in and to the unrestricted funds of the General Council, its various boards, agencies and instrumentalities, and having failed to show that any such general funds are to be used for other than authorized charter purposes, the complaint was properly dismissed on the merits.
The judgment appealed from should be affirmed, without costs.
FROESSEL, J. (dissenting).
This action involves a so-called proposed Basis of Union between the Congregational Christian Churches of the United States and the Evangelical and Reformed Church. Plaintiffs-appellants seek to prevent the proposed union, or, failing in that, ask for a declaratory judgment as warranted by the pleadings and admissions of the parties.
As of January 1, 1949, 54%, or 3,120, of a total of 5,715 Congregational Christian Churches in the United States voted favorably upon the proposal (72.77% of the churches voting gave their approval); 1,433 did not vote, and 1,162 churches voted "No". Following such approval, defendant, General Council of the Congregational Christian Churches of the United States, deemed itself authorized to proceed with the proposals *168 outlined in the so-called Basis of Union with Interpretations, on its behalf as well as on behalf of those who might become parties to it, although it was originally recommended that it do so if 75% of the churches voting approved.
While professing a desire to preserve scrupulously the free autonomy of the individual churches, "all trust funds" and "the property rights of all bodies", the General Council nevertheless circulated an Analysis of the Basis of Union (under which a general merger of the corporate agencies and instrumentalities of both united churches is planned), in which it is stated that a church which votes against the Union "would, naturally, give up its rights [emphasis in original] in * * * United Church" organizations and agencies, "though, if it desired, it could continue to have such relationships with such bodies as would be possible to a church not being a member of the denomination", whatever that may mean.
With this immediate background, and the historic setting of the Congregational Christian Churches of the United States over a period of upwards of three centuries, as outlined in the prevailing opinion, plaintiffs applied to the Supreme Court for a declaratory judgment setting forth the declarations which they desired, and for injunctive relief. Defendant in its answer asked for a dismissal of the complaint, or, in the alternative, for a declaratory judgment setting forth the declarations which it desired. After a lengthy trial, Special Term, in accordance with section 473 of the Civil Practice Act, which provides that said court "shall have power in any action * * * to declare rights and other legal relations on request for such declaration", entered a judgment embodying in large measure the very declarations which the parties asked for, and in addition thereto gave to plaintiffs broad and sweeping relief. The Appellate Division, though declaring in the prevailing opinion certain rights of the parties, reversed Special Term and dismissed the complaint, with costs against plaintiffs in the sum of upwards of $6,000.
While, in my opinion, many of the declaratory provisions in the Special Term judgment were clearly warranted, I agree that the entire relief granted was too broad, and that its restraining provisions were not warranted. I also agree that it erred in *169 declaring that defendant had no power to proceed with or carry out the proposals called for in the Basis of Union. In my judgment, however, defendant may not in so doing impinge upon the rights of plaintiffs.
The Appellate Division, in reversing Special Term, held (1) that "civil courts do not interfere with ecclesiastical matters in which temporal rights are not involved"; and (2) that as to plaintiffs' "control of their individual properties and funds", and "as to funds held under express trusts [which would include pension funds], there is no dispute between the parties". (3) "As to other funds held by or under the control of the defendant", it assumed to declare that plaintiffs had not shown any rights therein, but nevertheless held that "there should have been no declaration of the rights of plaintiffs with respect to the funds and assets held by the corporate societies and agencies" until the latter were brought before the court as parties. (4) Finally, it held that a "declaratory judgment serves a legitimate purpose only" when the parties affected are before the court; yet it failed to approve Special Term's declaratory judgment even with respect to the very matters concerning which, as between themselves, both parties had asked for a declaration. (279 App. Div. 1074, 1075, 1076.)
We are all in accord that there is no ecclesiastical question in this case. The parties agree as to the independence and autonomy of the local Congregational Christian Church in all matters temporal and spiritual, and that the Association, through voluntary independent organizations, was devised for fellowship and co-operation, but without ecclesiastical authority. The local Congregational Church, unlike most other religious organizations, is subordinate to no higher earthly spiritual authority. The General Council is a voluntary unincorporated association, and concededly is without "power or authority to enter into or to make any contract or commitment of any kind binding upon plaintiff Church".
The Appellate Division has properly held that plaintiffs may not be disturbed with respect to (1) ownership and control of their own properties, nor (2) as to funds held under express trusts, which include pension funds.
*170 As to any unexpended funds contributed by plaintiffs to defendant or to the Corporation for the General Council or to the Congregational Board of Ministerial Relief, defendant agreed at the close of the trial that such moneys may be used only for the purposes authorized by its charter or constitution and by-laws as they exist at the date of the trial court's decree.
We also agree that there should have been no declaration either by Special Term or the Appellate Division as to the rights of plaintiffs with respect to the funds and assets held by the various corporate societies and agencies until the latter were brought before the court as parties. As to such funds, which we are told amount to upwards of $60,000,000, plaintiffs may well have rights in the way of continued service and otherwise, by reason of their contribution of many tens of thousands of dollars over the years. Whatever these rights  which may only be determined when the necessary parties are before the court  they may not be stripped from plaintiffs simply because they choose to remain independent Congregational Churches. Good faith and Christian understanding on both sides should solve such problems as they actually arise; should such understanding not come to pass, plaintiffs may then urge whatever rights they claim to have, and which they assert are impinged upon, in an appropriate action with all necessary parties before the court. Because we cannot pass upon them at this time is not to say that they have no rights.
For these reasons, I am of the opinion that the Appellate Division erred in dismissing the complaint. This has been a long trial. As a result of the institution of this action, and in the course of the trial, concessions were made resolving many of the issues between the parties. To preserve these concessions and requested declarations  as Special Term has  is a function of a declaratory judgment, and clearly within the scope of Special Term's powers. The Appellate Division recognized in its opinion that a declaratory judgment serves a legitimate purpose when the persons affected are before the court. Here plaintiffs and defendant are before the court, and a declaratory judgment as to their respective rights, between themselves, is clearly authorized. Plaintiffs should not have been denied any relief whatsoever, but those provisions of the Special Term *171 judgment which both the Appellate Division and the members of this court recognize as proper should have been permitted to stand.
The judgment of the Appellate Division should be reversed and the judgment of Special Term modified as follows:
The first two ordering paragraphs should be stricken.
As to the third ordering paragraph, subdivisions 1 and 2 should be stricken and the following substituted therefor: "The defendant, The General Council of the Congregational Christian Churches of the United States, has the power and authority to proceed with and carry out the proposals in the Basis of Union for itself and for those who may become parties to it, without the approval of the plaintiffs or those churches for whose benefit the plaintiffs claim to be suing."
In the same third ordering paragraph, subdivisions 3, 4, 5, 6 and 7 should be allowed to remain, for this relief was asked for in part by plaintiffs in paragraph 3 of their prayer for relief, and consented to altogether by defendant in paragraphs CII-CV of its prayer for relief.
Subdivision 8 of the third ordering paragraph should be stricken.
A further subdivision should be added to said third ordering paragraph embodying paragraph CVI of defendant's prayer for relief.
An additional declaration should also be added to conform to defendant's motion made at the close of the trial to add paragraph CVII(a) to its prayer for relief, reading as follows: "Declaring that any unexpended funds contributed by the plaintiff to the defendant or to the Corporation for the General Council or to the Congregational Board of Ministerial Relief, may be used only for the purposes authorized by its Charter or Constitution and By-laws as they exist at the date of this Court's decree."
The fourth ordering paragraph granting injunctive relief should be stricken in its entirety.
Subdivisions 1 and 2 of the fifth ordering paragraph should be deleted; subdivision 3 thereof may stand.
The sixth, and last, ordering paragraph should be modified by substituting for the words "the plaintiffs" the words "either party".
*172 No costs should be awarded here inasmuch as both parties asked for a declaratory judgment.
Judgment affirmed. [See 306 N.Y. 751, 792, 851.]