FIRST CONGREGATIONAL CHURCH AND SOCIETY OF BURLINGTON, IOWA et al., Plaintiffs,

v.

EVANGELICAL AND REFORMED CHURCH et al., Defendants,

John T. Beach, as Treasurer of the National Council of Congregational Churches et al., added Defendants.

United States District Court
S. D. New York.
March 31, 1961.

Davies, Hardy & Schenk, New York City, for plaintiffs; Kenneth Greenawalt, New York City, Robert C. Heaney, Grand Rapids, Mich., Thomas Adams, New York City, William K. Van'thof, Grand Rapids, Mich., of counsel.

Wood, France & Tully, New York City, for Congregational Christian, defendants; David W. Peck, Loren T. Wood, John T. Redmond, New York City, of counsel.

Mudge, Stern, Baldwin & Todd, New York City, for defendant Evangelical & Reformed Church; Paul D. Miller, New York City, Walter W. Kocher, New York City, John W. Mullen, Washington, D. C., of counsel.

Goldstein, Judd & Gurfein, New York City, for American Board of Commissions for Foreign Missions; Orren G. Judd, New York City, of counsel.

DIMOCK, District Judge.

In this case I have directed a separate trial of the issue of res judicata and collateral estoppel (hereinafter for brevity referred to as "res judicata") with the thought that it might possibly eliminate the necessity for a trial on the merits. Defendants have rested in their presentation of their affirmative case in support of their defense of res judicata. Plaintiffs have moved for a ruling that defendants have not made out a prima facie case. That motion is before me.

The case is one of great importance to large numbers of people and involves venerated and deep seated convictions. A large segment of the followers of the Congregational faith sincerely believe that a pending merger with the Evangelical and Reformed Church will create a body lacking the fundamentals of Congregationalism and will devote to an alien purpose large sums which have been piously accumulated for the extension of the Congregational idea.

It was but natural that the proposed merger should be fought through the state courts with all of the skill and determination at the non-assenters' command. It is no less natural that, having been unsuccessful in the state courts, people so deeply convinced of their duty to their faith should attempt to obtain a different result in this court. Their motives are entirely praiseworthy.

Those who favor the merger, however, have the same duty to defend their belief that it will advance the Christian ideals that they cherish no less deeply than do the non-assenters. Their motives in maintaining that the matter has been settled by the New York Court of Appeals are no less high.

The first task of the court is to pass upon this plea that the matter has been laid at rest by a court decision. The consideration of the merits of the controversy between the parties has not been reached in this court. Upon this application this court cannot even consider the correctness of the decision of the New York Court of Appeals. Such is the effect of a decision on the merits by a court of competent jurisdiction that those whose rights have been lawfully submitted for adjudication are bound by the result even if they can demonstrate to all the world that the facts were other than as determined by the court or that its reasoning was faulty.

The purpose of law suits is to get things decided. The inquiry here is whether the law suit in the state courts attained this purpose. If it did, this court cannot re-examine the questions presented to the state courts. Only if those questions are still open will the correctness of the decision of the New York Court of Appeals be a factor to be considered. With that in mind I shall proceed to a consideration of the question whether the plaintiffs in this case are prevented by the state court decision from presenting the questions on which they seek a decision.

In considering the application for a separate trial of the issue of res judicata I reached tentative conclusions as to the interpretation and effect of the decision by the New York Court of Appeals in Cadman Memorial Congregational Soc. of Brooklyn v. Kenyon, 306 N.Y. 151, 116

N.E.2d 481. These conclusions have been confirmed by the further study and argument involved in the hearing of this application. It will be a convenience to have those conclusions reiterated here.

■ The matters of fact and law necessarily determined by the Court of Appeals in reaching its conclusion that the plaintiffs were not entitled to the declarations and injunctive relief sought constitute adjudications binding upon the litigants and those who, under the rules of law applicable to res judicata, were represented by the parties.

The following matters were necessarily determined by the Court of Appeals in concluding that the declarations sought by plaintiffs ought not to be made.

Under the Basis of Union no Congregational Christian Church, association, conference, or their members, would be subject in respect to either their spiritual or temporal affairs to any control by the proposed United Church of Christ. Freedom of worship and education at present enjoyed would be preserved in the United Church and not abridged. No individual church would be obligated to join the union except through its own voluntary action. Each member church would continue to possess the same freedom of faith and manner of worship as theretofore enjoyed. There would be no interference in or abridgement of Congregational usage and practice. Under these circumstances no ecclesiastical question was presented.

The various agencies, boards and instrumentalities holding and administering funds were agents of the General Council. Funds held by them under express trusts were not affected by the proposed union. Contributions in other forms created no proprietary or beneficial interest warranting the civil courts in interfering with their expenditure so long as it appeared that there was no violation of charter purposes.

Besides denying plaintiffs' prayer for declaratory relief and a restraining order against the General Council, the Court of Appeals remarked "nor may any restraining order issue against the various corporate boards and agencies, the Evangelical and Reformed Church or the United Church of Christ, as they have not been made parties defendant and are not before the court." No statement was made that such determinations as were made were not binding as to the parties not before the court. In this respect my construction of the decision of the Court of Appeals differs from that of Judge Dawson in his denial of the motion for summary judgment, D.C., 160 F.Supp. 651.

Even if these necessary determinations made by the Court of Appeals were wrong or were made upon concessions of the plaintiffs rather than upon evidence or were made on no evidence at all they are still binding upon the parties to the litigation and those whom they represented.

Two questions thus arise here: Were plaintiffs in this case represented in Cadman? and, Are any new questions presented? If plaintiffs in this case were not represented in Cadman, then the whole field is open. If plaintiffs here were so represented and there are new questions, then those new questions are open.

Defendants offered in evidence the record and briefs in the Cadman case and a few exhibits. Plaintiffs then moved on defendants' case to dismiss the defense of res judicata. In the consideration of a separate trial of the defense of res judicata, the court is faced with the difficulty of determining what the plea is supposed to be a defense to. Pleadings are so unimportant in modern practice that one cannot assume that a plaintiff's proof would follow his complaint. To cut the Gordian knot, documents were admitted as court exhibits which the court deemed would, with certain specifications of plaintiffs' claim that had been given, supplement the complaint so as to give a picture of plaintiff's case sufficiently complete to test the validity of the defense of res judicata.

Plaintiffs have prepared a statement of the declarations that they want and the parties have briefed the questions pre-

sented, arranging their arguments by reference to that statement. I shall follow that lead and decide the various questions as they arise.

### Requested Declarations I and II as to Specific and General Provisions of the Agreement.

These ask that the "Basis of Union" with "Interpretations" be declared illegal, invalid and void.

As above stated, the State Court of Appeals held to the contrary. The only question, therefore, is whether there are parties here who were not represented in Cadman. The Cadman plaintiffs were a religious corporation which had custody and control of the temporalities of the Cadman Church and an unincorporated society which had charge and control of its spiritual and religious functions.

I ruled in the course of the trial that the members of the unincorporated society who were plaintiffs represented the members of all other Congregational churches. The specifications do not indicate that any other Congregational Church has interests so substantially different from the Cadman Church as to give it the right to a private determination of the validity of the proposed union. Ministers in general have the same interest as other members of the churches and so do members of the General Council and members of the boards and agencies.

The Evangelical and Reformed Church and the United Church of Christ which have been added as defendants have the same interest as the General Council which defended the Cadman case and thus are entitled to claim the benefit of the Cadman decision as they do here even if they could not be forced to accept its burdens. Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97; Gart v. Cole, 2 Cir., 263 F.2d 244.

That leaves the problem of the special interest of ministers in the pension funds. Plaintiffs' Court of Appeals brief in Cadman complained of the lack of protection of the rights of the ministers of non-assenting churches and discussed the interest of both churches and ministers in pension and retirement funds. The Court of Appeals referred to these funds in the opinion, 306 N.Y. at pages 165–166, 116 N.E.2d 481. Thus it is clear that the matter was covered by the decision in favor of the proposed union. The question remains, however, whether the ministers who had contributed to the fund were represented. In my opinion they were. The Cadman Church had its own interest in the funds as plaintiffs in the Cadman case showed by introducing evidence that churches, in addition to making contributions to the Annuity Fund, paid their ministers' dues in the Fund.

A similar question arises with respect to mortgages on churches and held by the Church Building Society. The Cadman Church was not subject to such a mortgage but one of the plaintiffs here is. The matter was raised in the Court of Appeals and the plaintiffs there pointed out that the form of mortgage provided for payment with back interest if a church ceased to be in fellowship with a Congregational and/or Christian Association recognized by the General Council and said that there was danger that such a mortgage could be made due and payable. The matter was thus passed upon but again the question remains whether the Cadman plaintiffs represented the churches that had mortgages on them. All Congregational Churches had the right to borrow under such mortgages so that the question was one of interest to the Cadman Church. The mere fact that other churches had still greater interest in the question does not entitle them to a separate determination.

### Requested Declarations III Concerning the Rights, Status and Legal Relations of Churches, Ministers, Members, Boards, Agencies and Instrumentalities.

Here plaintiffs, under no less than twenty-five heads, ask for what they characterize as "Declarations concerning the rights, status and legal relations with churches, ministers, members, boards, agencies and instrumentalities". Under

this head plaintiffs seek declarations substantially like those set out by the New York Court of Appeals in its opinion on page 161 of 366 N.Y., at page 484 of 116 N.E.2d in the following words:

"The plaintiff seeks a judgment declaring that the General Council has no power or authority to consummate the Basis of Union on its behalf or. other Congregational Christian Churches, and that any Congregational Christian Churches uniting with the proposed United Church of Christ, as proposed in the Basis of Union 'will cease to be churches of that [Congregational] fellowship and denomination and cease to have any right or interest in or any connection with the corporations, commission board, agencies and instrumentalities representing or acting for or under the direction and control of the Congregational Christian Churches or the funds and properties thereof' and that any Congregational Christian Churches who do not join with the United Christian Church will 'remain the Congregational Christian Churches entitled to all the rights and privileges presently possessed and enjoyed by such churches' including 'the control and benefit of all the corporations, commissions, boards, agencies and instrumentalities which now represent and act for or are under the direction of the present Congregational Christian Churches' and that the United Church and all those who join with it shall have no interest therein."

Such declarations were made at Special Term in the Cadman case but the Appellate Division dismissed the complaint on the merits. The Court of Appeals affirmed the judgment dismissing the complaint on the merits. It did so, because, as stated on page 167 of 306 N.Y., on page 481 of 116 N.E.2d, the proof had established that the Basis of Union was voluntary and in no way interfered with the Congregational faith or manner of worship and the plaintiff had failed to es-

tablish any direct or beneficial interest in the unrestricted funds of the General Council "its various boards, agencies and instrumentalities" and had failed to show that any such general funds were to be used for other than authorized charter purposes.

The Court of Appeals, in a previous part of the opinion at page 163 of 306 N.Y., at page 485 of 116 N.E.2d, had determined that, because union was voluntary, it would not abridge Congregational usage and no ecclesiastical question was presented and, in the next paragraph, began, "We turn then to a consideration of whether the consummation of the Basis of Union will interfere with any alleged property right possessed by the plaintiff in and to funds and assets now held and controlled by the General Council, its boards, agencies and instrumentalities * * *."

Since the Court of Appeals, to affirm a dismissal of the complaint on the merits, evidently needed to do no more than to find that the Basis of Union was voluntary and that it did not interfere with Congregational usage and that the plaintiffs had no interest in the funds of the General Council and the boards and that the funds were not to be used other than for charter purposes, those findings must have been conclusive against the complaint's prayers for declarations as to the respective rights of the joining and nonjoining churches and ministers, boards, agencies and instrumentalities. It cannot be said that the refusal to make such a declaration was merely the exercise of discretion since neither the Court of Appeals nor the Appellate Division made the express statement to that effect required by Rule 212 of the New York Rules of Civil Practice.

There is thus an adjudication, as between the parties in the Cadman case, that, so long as there is no requirement that any church join the union, no abridgement of congregationalism, no direct or beneficial interest in the funds of the boards and agencies and no threat of use of the funds for other than charter

purposes, there is no right to a declaratory judgment.

Again, however, the question is presented whether that adjudication is binding upon the parties to this action. As above indicated, all Congregational Churches, all members of the churches, all ministers of the churches, were represented by the plaintiffs in the Cadman case. As between them and the General Council which was defendant in the Cadman case, the adjudication that no case is made out for a declaratory judgment involving the relations between the joiners and non-joiners is binding. The bringing in of the boards, agents and instrumentalities as defendants in this action does not open the question under the finding of the Court of Appeals that the board's agencies and instrumentalities were agents of the General Council. The determination in the Cadman case is binding as to them. Moreover, the very fact that a retrial of the Cadman case on an issue between plaintiffs and the boards, agencies and instrumentalities might reach a different determination with respect to the same transactions from that reached when the issue was tried between plaintiffs and the General Council brings into play the doctrine of Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97, supra, and Gart v. Cole, 2 Cir., 263 F.2d 244, supra.

#### IV. Requests for Declarations as to Polity, Usage and Practice.

Here, again, is a request for substantially the same declaration as was asked in the Cadman case and was considered and referred to by the Court of Appeals when it affirmed a judgment dismissing the complaint on the merits for the express reason that the Basis of Union did not interfere with the Congregational manner of worship. The refusal of the Court of Appeals to make the requested findings with respect to church polity is binding on the parties here just as was the refusal of the Court of Appeals to make findings with respect to the preceding group III.

#### V. Requests for Declarations as to Annuity and Retirement Benefits.

As indicated above, possible loss of rights of ministers to annuity and retirement benefits was submitted to the Court of Appeals as a basis for a determination that the proposed union was unlawful. The matter was referred to by the Court of Appeals and the decision made that neither on this ground nor any other was the proposed union unlawful. Plaintiffs here, however, ask for declarations including the prospective operation of the annuity and retirement funds with respect to non-assenting ministers and lay workers. Insofar as there is a fund in which ministers and lay workers are entitled to participate there is already outstanding the judgment of the Court of Appeals to the substantial effect that no rights have been withdrawn. Insofar as plaintiffs wish a declaration that the present system will be maintained in perpetuity they are not entitled to it. While a suit for such a declaration may not be barred by res judicata it is just as effectively barred by the fact that plaintiffs are not entitled to the declaration.

#### VI. Requests for Declarations as to National Council.

This subject is not within plaintiffs' specifications and consideration of it is therefore eliminated.

#### VII. Requests for Declarations as to United Church of Christ.

These requests raise the point that the actual facts present a problem different from that passed upon by the New York Court of Appeals. The point most strongly stressed by plaintiffs is that the Court of Appeals dealt with a projected union of communions while what eventuated was a union between the General Council of the Congregational Christian Churches and the defendant Evangelical and Reformed Church.

The mere fact that the union took a somewhat slightly different form from

that described in the Basis of Union with Interpretations presented to the Court of Appeals would not necessarily mean that the decision of the Court of Appeals was not res judicata. Variation in details was inevitable. It is only in case that the change can be reasonably said to have affected the rights of plaintiffs and those represented by them in the Cadman case that persons bound by the matters adjudicated in the Cadman case in the Court of Appeals would be entitled to relitigate those adjudications.

In solving the question presented one must determine just what the Court of Appeals decided and just what the materials were upon which it based its decision. In determining that the plan when consummated would not injure the Cadman plaintiffs and those represented by them the Court of Appeals had before it the Basis of Union with Interpretations. On a construction of those papers depended the determination of the question whether the Cadman plaintiffs would be injured. In determining this question, however, the Court of Appeals accepted a construction of those documents based upon what it termed to be concessions and admissions by the General Council, defendant in that case. Whether or not one would agree that the Court of Appeals acted correctly in giving weight to those admissions the fact was that the Court of Appeals reached the conclusion that the rights of the Cadman plaintiffs would not be infringed by the merger contemplated by the Basis of Union with Interpretations. That was an adjudication binding upon the Cadman plaintiff and those represented by it. It cannot now be reviewed by a member of that class even though he could convince the reviewing court that the New York Court of Appeals had reached the conclusion by a faulty process of reasoning or by accepting a hypothesis of facts which could not be supported. We start therefore with an adjudication by the New York Court of Appeals that the result contemplated by the Basis of Union with Interpretations would not infringe the rights of the churches, members or ministers with respect to ecclesiastical matters, church polity or property. The immediate question is, therefore, whether the union of the General Council of the Congregational Christian Churches with the Evangelical and Reformed Church is a departure from the Basis of Union with Interpretations. Whatever a union of communions may have meant as construed by the Court of Appeals, it certainly did not mean that every Congregational Christian Church would willy nilly become part of the United Church of Christ. A fundamental factor in the decision of the Court of Appeals that the rights of the churches would not be infringed was that no church would be required to be a member of the new United Church of Christ against its will. It is noteworthy that the Court of Appeals opinion, 306 N.Y. on page 163, 116 N.E. 2d 481, refers to "non-assenting" churches. Thus there could be a union of communions which did not embrace all of the churches in the denomination known as the Congregational Christian Churches.

Plaintiffs' position with respect to this problem seems technical in the extreme. If there is any difference between a union of communions and a union of one communion with the highest administrative board of the other communion, insofar as the effect upon the churches whose administrative board was included is concerned the most serious effect would be where the union was truly one of one communion with another communion. The Court of Appeals has held that the proposed union of communions would not affect the rights of persons situated as are plaintiffs and that therefore they are not entitled to a determination of what their rights are. A fortiori, a union of an administrative body of the denomination to which plaintiffs belong, with another communion, would not affect plaintiffs' rights and thus no declaration of what their rights were should be given.

The next point made by plaintiffs raises a very serious question. They say that the form of the organization actually cre-

ated does interfere with the traditional freedom of Congregational Churches. One way of answering this point would be to say that the Court of Appeals felt that if any Congregational Church did not like the new organization it did not have to join it. I do not, however, read the Court of Appeals decision so narrowly. The opinion went on to say, in substance, that the plan envisaged by the Basis of Union with Interpretations, even if accepted by a given Congregational Christian Church, would not constitute an interference in or abridgement of Congregational usage or practice. On that basis the judgment dismissing on the merits the suit for declarations was affirmed. If the plan actually adopted differed from that outlined in the Basis of Union with Interpretations so that a different conclusion with respect to its effect upon the rights of Congregational churches could be reached reasonably the party should be entitled to litigate that question. I must bear in mind also that that question as to what effect the change might have upon the rights of the Congregational Churches is not before me but only the question whether the effect is so different from that contemplated that plaintiffs would have a right to a full dress trial of what that effect was and whether it would entitle them to a declaration of their rights under the new plan.

Fundamentally, plaintiffs' point is that the United Church of Christ as actually constituted turned out to be a much tighter organization than contemplated by the Basis of Union with Interpretations. It is said that the United Church of Christ is a legal entity with headquarters, officers, constitution and by-laws and that it was contemplated that the body which would have a constitution and by-laws would be the General Synod of the United Church of Christ rather than the United Church itself.

The record does not support plaintiffs' position. The Basis of Union in Article IV-A provided for a constitution of the United Church. The Basis of Union in Article IV-N provided for headquarters for the United Church and contemplated by-laws (VIII-D-3 and F-I).

It is true that the Basis of Union with Interpretations says nothing about officers of the United Church of Christ. The constitution and by-laws, however, give to the president no greater power than the secretary of the General Council of the Congregational Christian Churches has.

Plaintiffs say and defendants deny that there were some departures from the procedure laid out by the Basis of Union with Interpretations in the actual setting up of the United Church of Christ. The decision of the Court of Appeals that the Cadman plaintiffs had no rights that were affected by the proposed union and that therefore the judgment dismissing on the merits the plea for declarations was correct rested in no measure on any determination with respect to the procedure for setting up a new organization.

Moreover I am unable to find that there was any departure from the procedure contemplated by the Basis of Union with Interpretations submitted to the Court of Appeals. Plaintiffs' objection seems to be that the 300 persons purporting to act on behalf of the Congregational Christian Churches at the joint meeting at which it was declared that the union of the communions was effective were not designated by the Congregational Christian Churches but rather by the General Council of the Congregational Christian Churches. No way has been pointed out by which the Congregational Christian Churches could have appointed delegates. The Court of Appeals had before it the vote of the individual churches and noted that not even the recommended 75% of individual churches entitled to vote had formally approved. The Court of Appeals thus could not have contemplated unanimous action by the Congregational Christian Churches and their only general representative body was the General Council. The Court of Appeals must have contemplated that the 300 delegates would be appointed by the General Council.

Plaintiffs point out as a departure from the plan laid out by the Basis of Union with Interpretations two resolutions of the Uniting General Synod of the United Church of Christ providing that the present structures of the Congregational Christian Churches and the Evangelical and Reformed Church and their related boards, commissions, agencies, etc. should be continued until such time as the constitution and by-laws of the United Church of Christ should have been duly submitted and approved as provided in the Basis of Union. The Basis of Union in Article X-D provided that the General Synod of the United Church of Christ at its first meeting should take appropriate steps necessary to insure the continuity and to effect the consolidation of the boards, commissions and other agencies and instrumentalities and to make effective an interim plan for their consolidation and operation as more explicitly set forth in Article VIII. Article VIII-A provided that the boards, commissions and other agencies and instrumentalities should proceed to correlate their work under the General Synod as rapidly as their charters, constitutions and property rights, the effectiveness of their program and the laws of the state would permit. How the postponement of the consolidation of the various sub-bodies until the adoption of the constitution and by-laws could have indicated a different result in the New York Court of Appeals, plaintiffs have not attempted to demonstrate.

Paragraphs 42, 43 and 44 of the constitution deal with conferences. They provide:

"A Conference is that body of the United Church of Christ which is composed of all local churches in a geographical area and of all ministers who have standing in the Associations of that Conference or in the Conference itself.

"Subsequent to the initial reorganization of Conferences in the United Church of Christ, the boundaries of any new Conference, or any adjustment of boundaries between Conferences, shall be determined by the Conferences concerned with the approval of the General Synod. The standing of a Conference as a body of the United Church of Christ is determined by the General Synod.

"A Conference may retain or secure its own charter, and adopts its own constitution, by-laws and other rules which it deems essential to its own welfare and not inconsistent with this Constitution and the By-Laws of the United Church of Christ."

The provision that the constitution, by-laws and rules of a conference shall be not inconsistent with the constitution and by-laws of the United Church of Christ was not contained in the Basis of Union with Interpretations. In form it is mandatory and seems to limit autonomy. Defendants, however, point to paragraph 3 of the preamble to the constitution of the United Church of Christ, which reads as follows:

"3. The provisions herein define and regulate the General Synod and those instrumentalities of the United Church of Christ which are recognized, established by or responsible to the General Synod, and describe the free and voluntary relationships which the local churches, Associations, Conferences and ministers sustain with the General Synod and with each other. The pattern of relationships and procedures so described is recommended to local churches, Associations, Conferences and ministers, to enable them more effectively to accomplish their tasks and the work of the United Church of Christ."

They also point to paragraph 21 which reads as follows:

"21. The autonomy of the local church is inherent and modifiable only by its own action. Nothing in this Constitution and the By-Laws of the United Church of Christ shall destroy or limit the right of each local church to continue to operate in the way customary to it; nor shall be

construed as giving to the General Synod, or to any Conference or Association, now or at any future time, the power to abridge or impair the autonomy of any local church in the management of its own affairs, which affairs include, but are not limited to, the right to retain or adopt its own methods of organization, worship and education; to retain or secure its own charter and name; to adopt its own constitution and by-laws; to formulate its own covenants and confessions of faith; to admit members in its own way and to provide for their discipline or dismissal; to call or dismiss its pastor or pastors by such procedure as it shall determine; to acquire, own, manage and dispose of property and funds; to control its own benevolences; and to withdraw by its own decision from the United Church of Christ at any time without forfeiture of ownership or control of any real or personal property owned by it."

There is also the preamble to the by-laws of the United Church of Christ which is essentially identical with paragraph 3 of the preamble to the constitution.

Similar provisions with respect to associations that closely parallel the provisions with respect to conferences are found in paragraphs 36, 37 and 38 of the constitution.

These new provisions which make the constitution and by-laws of the United Church of Christ supreme over the constitution and by-laws of the associations and conferences are the basis for the most serious argument that the freedom of a Congregational Christian Church which joined the union would thereby be abridged. It is to be noted, however, that these provisions deal with the associations and conferences and not with the churches themselves. Section 21 of the constitution provides:

"Nothing in this Constitution and By-Laws of the United Church of Christ shall destroy or limit the right of each local church to continue to operate in the way customary to it; nor shall be construed as giving to the General Synod, or to any Conference or Association, now or at any future time, the power to abridge or impair the autonomy of any local church in the management of its own affairs * * *."

If the constitution had said that no church could take any action inconsistent with the constitution or by-laws, it is doubtful whether this general provision of section 21 that nothing in the constitution and by-laws of the United Church of Christ should destroy or limit the right of each local church to continue to operate in the way customary to it would render nugatory a specific limitation of its activities to those not inconsistent with the constitution and by-laws. Here, however, it is the associations and conferences whose actions are expressly limited and the provision of section 21 just quoted is quite appropriate and effective as a provision that, while such actions are not to be inconsistent with the constitution and by-laws, they must nevertheless not destroy or limit the right of each local church to continue to operate in the way customary to it.

This conclusion that the autonomy of the individual church is paramount means that the individual church may adopt its own constitution and that no contrary provision of a constitution of an association or conference would be valid. Thus, conceivably, under constitutions adopted by themselves, a group of churches could set up associations and conferences with constitutions patterned in any way they wanted. The net result is that the provision that the constitutions of the associations and conferences shall not be inconsistent with the constitution of the United Church of Christ is merely precatory. Its addition to the provisions of the Basis of Union with Interpretations deprives neither the churches nor the associations nor the conferences of any rights expressed in the Basis of Union and is well within the requirement of Article IV-A thereof that

the constitution of the United Church of Christ shall be "based upon" the principles set forth in the Basis of Union.

I find nothing in the constitution and by-laws of the United Church of Christ which goes any farther than the Basis of Union with Interpretations in depriving any member of the classes represented by plaintiffs in this action of any rights. Plaintiffs in their argument in the course of the trial called attention to a long list of instances where the constitution and by-laws of the United Church of Christ were supposed to have departed, either by omission or commission, from the provisions of the Basis of Union with Interpretations. Not one of these departures except the ones just discussed with respect to the advice that the constitutions and by-laws of the conferences and associations should not be inconsistent with the constitution and by-laws of the United Church of Christ requires more for its refutation than the citation of the liberal provision in Article IV-A of the Basis of Union:

> "This constitution shall be *based upon* the principles set forth in this Basis of Union." (Emphasis supplied.)

VIII. Requests for Declarations as to Boards, Agencies, Corporations and Instrumentalities.

Here plaintiffs assert the invalidity of any actions by which Congregational boards affiliate with the United Church or by which any change is made in the relationship between the boards and Congregational Christian Churches as existing prior to the formulation of the union. The New York State Court of Appeals affirmed the refusal to make such declarations because no rights of the Cadman plaintiffs would be infringed by the projected union. I have held that all of the parties plaintiff were represented by the Cadman Church. I have also held that all of the parties defendant in this case were represented by the General Council in the Cadman-case, as least insofar as the present defendants choose to take advantage of the judgment in the

Cadman case. The denial of the requested declarations with respect to the boards, agencies, corporations and instrumentalities by the New York Court of Appeals is thus res judicata in the instant case.

Declarations are requested with respect to a mortgage held by the defendant Congregational Church Building Society on the church property of plaintiff Mayfair Congregational Church of Toledo, Ohio. As held above, under headings I and II, however, rights with respect to such mortgages were among the rights which the New York Court of Appeals held had not been infringed and as to which there should be no declaration.

A declaration with respect to trust funds held by defendants is requested. The New York Court of Appeals, 306 N.Y. at page 164, 116 N.E.2d at page 485, accepted an agreement by all parties "that the funds held by the General Council and any of its agencies, boards and instrumentalities under express trusts, including pension funds, will not be affected". The Court of Appeals, 306 N.Y. on page 167, 116 N.E.2d 481, cited this as one of the reasons why there was no basis or necessity for a declaratory judgment. This adjudication that trust funds will not be affected by the proposed union is binding here. A similar declaration is asked with respect to restricted funds held by the defendant Congregational, boards, agencies and instrumentalities. Neither the complaint nor the specifications define these trust and restricted funds and in the absence of such a definition no declaration can be made with respect to them.

Finally, plaintiffs say that three certain actions taken by various of the defendant Congregational boards and agencies constitute material departures from the Basis of Union with Interpretations, from representations and admissions made by defendant General Council in the course of the Cadman litigation and from Congregational polity, usage and practice.

As above held, the representations and admissions made to the court in the Cadman litigation did no more than assist

the Court of Appeals in its construction of the provisions of the Basis of Union with Interpretations so that it is necessary to consider only the provisions of the Basis of Union with Interpretations. Similarly, it would be immaterial even if this court should find that the acts of the defendant boards violated Congregational polity, usage and practice if it was within the provisions of the Basis of Union with Interpretations which have already received the blessing of the State Court of Appeals in a judgment binding upon the parties here. My only question, therefore, is whether these actions constitute a material departure from the Basis of Union with Interpretations.

The First of these three actions is the making of an agreement between the Board of Home Missions of the Congregational Christian Churches and the General Council of the Evangelical and Reformed Church, approved January 30, 1957. This agreement did no more than to provide for coordinating the work of the home mission boards of the two denominations pending the adoption of the constitution. The Basis of Union provided in Article VIII-A that the work of the various boards should be correlated. It is true that the Basis of Union in Article VIII-E provided that the homeland boards should from the time of the confirmation of the union until the adoption of a constitution function by means of a single corporate body. The fact that things did not progress that far before the adoption of the constitution is not such a change as to warrant re-examination of the decision of the New York Court of Appeals.

The other actions which plaintiffs charge are departures from the provisions of the Basis of Union with Interpretations are resolutions by the Annuity Fund for Congregational Ministers and the resolutions adopted by the General Council of the Congregational Christian Churches in 1958 on the one hand and resolutions by the Congregational Church Building Society and the General Council of the Congregational Christian Churches in 1958 on the other.

The latter resolutions concerned church mortgages and on their face added nothing to the seriousness of the question which was the subject of discussion under declarations I and II above when that matter was taken up. The resolutions of the Annuity Fund are intended to assure Congregational Christian Ministers of their continued membership in and benefits from the Annuity Fund, despite the fact that minister or church might not have an affiliation with the United Church. A similar 1947 resolution was before the Court of Appeals in Cadman. Plaintiffs state that the 1947 resolutions and 1958 resolutions are not alike but do not explain how such differences as exist would vitiate the effect of the action of the State Court of Appeals.

Defendant American Board of Commissioners for Foreign Missions besides joining in the plea of res judicata raises points involving defenses peculiar to it. The only question that I have considered is whether defendants have made out a prima facie case that the Court of Appeals decision is res judicata. In deciding that question as it affects all parties I have not passed upon the question whether defendant American Board of Commissioners for Foreign Missions has any other defense to the case.

■ The result of all of the foregoing is that defendants by their proof have made out a prima facie case of res judicata against all of the claims of all of the plaintiffs. While plaintiffs are entitled to adduce any evidence at their command to controvert defendants' proof of res judicata, defendants' evidence has not been of a character where any issue of fact can be raised and it is difficult to imagine an affirmative defense to a plea of res judicata. Nevertheless, there will be a formal resumption of the trial of the issue of res judicata at a time in the near future to be fixed by arrangement with my chambers.